STATE of Iowa, Appellee,

v.

**Gerald Leroy GALLUP, Appellant.**

No. 92–17.

Supreme Court of Iowa.

May 19, 1993.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Martha Boesen and Sheryl A. Soich, Asst. Attys. Gen., Michael Riepe, County Atty., and John Courter, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

The jury in this case convicted the defendant of two crimes: delivery of a controlled substance and distribution of a taxable substance without a drug tax stamp. *See* Iowa Code §§ 204.401(1)(b)(5), 421A.12 (1991).[1] Because the defendant was an habitual offender, the district court enhanced the sentence. *See* Iowa Code §§ 902.8, 902.9(2).

On appeal from these convictions, the defendant raises four issues. First, the district court erred in overruling his motions for a judgment of acquittal because the State failed to disprove the defendant's defense of entrapment. Second, the district court abused its discretion by overruling the defendant's hearsay objection to an evidence tag. Third, the district court erred by overruling the defendant's motion to dismiss the trial information on double jeopardy, self-incrimination, and due process challenges to Iowa Code chapter 421A. Last, the district court imposed an illegal sentence by failing to merge his sentences on the delivery and drug tax stamp offenses.

Viewing the evidence in the light most favorable to the State, we think the jury could find the following facts. Paul Craff, a suspected drug dealer, unknowingly sold crystal methamphetamine to undercover agents on three different occasions. On February 7, 1991, authorities confronted him at his apartment with these facts. At the same time they offered him a "Cooperation and Plea Agreement." Its terms provided that if Craff could provide "five prosecutable cases" for the Henry county sheriff's office, one of the three delivery charges against him would be dropped. Craff understood that if he could provide authorities with additional prosecutable cases, he might receive a further reduction in charges.

Craff named seven alleged drug dealers. One was the defendant, Gerald Leroy Gallup. Before this, authorities had never suspected Gallup of any illegal drug activity.

On February 14 authorities met with Craff and debriefed him. The authorities told Craff that should he become aware of an imminent drug transaction, deputy sheriff Al Wittmer was to be his contact for any sting operation that might be set up.

Five weeks later Gallup knocked on Craff's door at about 2:30 a.m., awakening Craff. Craff let Gallup in. Gallup then asked Craff if he would like to buy some LSD (lysergic acid diethylamide). Craff declined, claiming he could not afford it right then. However, Craff left open the possibility of a "buy" by telling Gallup that if he could get the cash, he would call Gallup about the drugs.

Following the authorities' earlier instructions, Craff called Wittmer later that morning. He told Wittmer about his conversation with Gallup. Craff told Wittmer he thought he could make the buy from Gallup.

Wittmer then called sheriff Terry E. Morrow. Morrow told Wittmer to set up the buy. Craff and Gallup set up a meeting for 11:30 a.m. in a local grocery store parking lot.

Craff met Wittmer at a local cemetery before meeting Gallup. After searching Craff and his pickup truck, Wittmer put a recorder into Craff's chest pocket, turned it on, and gave Craff buy money.

---

1. In the revision of titles and subtitles in the 1993 Code, chapter 204 was transferred in its entirety to chapter 124; chapter 421A was transferred in its entirety to chapter 453B. All references in this opinion are to chapters 204 and 421A, the chapter numbers in effect at the time this cause of action arose.

Craff then went to his appointment with Gallup. Gallup drove up at the appointed time, entered Craff's truck, had some conversation with Craff, gave Craff the LSD, took the money from Craff, and left. Craff returned to the cemetery where Wittmer retrieved the recorder and LSD from him.

After Gallup was charged, he filed a motion to dismiss raising the constitutional challenges to chapter 421A. The district court overruled the motion.

Later Gallup filed another motion to dismiss. This time Gallup asked the court to find as a matter of law that he was entrapped. This, too, was overruled.

Following his conviction and sentence, Gallup appealed.

#### I. *Entrapment.*

Gallup's first complaint is that his motion for judgment of acquittal should have been granted. Under the standard he proposes, Gallup thinks the State failed to disprove his entrapment defense as a matter of law.

 Gallup finds fault with the objective test of entrapment articulated by this court in *State v. Mullen,* 216 N.W.2d 375, 382 (Iowa 1974) and used by the district court in this case. Briefly, under the *Mullen* standard,

> [e]ntrapment occurs when a law enforcement agent causes the commission of a crime by using persuasion or other means likely to cause a normally law-abiding person to commit the crime. Conduct merely providing an opportunity to commit a crime does not amount to entrapment.

I Iowa Criminal Jury Instructions 200.17 (1988). This court settled on the objective standard as opposed to the subjective standard in an effort to

> balance and recognize both the necessity to preserve the integrity of our courts and the Iowa criminal justice system, and

the urgency to use all legitimate, necessary means to combat crime.

*Mullen,* 216 N.W.2d at 380.

Gallup's proposed standard would require the State to additionally prove it had a reasonable suspicion, or even probable cause, to believe an individual was engaging in unlawful conduct before targeting that individual by providing the opportunity to commit a crime. We decline Gallup's invitation to impose either additional proof requirement on the State.

Under the present state of the law, we think the State produced sufficient evidence to disprove Gallup's entrapment defense. The district court correctly overruled Gallup's motion on this issue.

#### II. *The Evidentiary Issue.*

As part of the State's case, the prosecutor offered as an exhibit an envelope containing the LSD Gallup allegedly sold to Craff. An evidence tag was attached to the envelope. Wittmer prepared the tag for internal record keeping. Over Gallup's hearsay objection, the district court admitted the exhibit with the tag attached.

The tag looked like this:

**PROPERTY/EVIDENCE TAG**

| | |
|---|---|
| CASE NO. | 44–900829–08 |
| DATE | 03 / 23 / 91 |
| TIME | 11:42 AM |
| OFFENSE | Del. Cont. Sub. |
| DESCRIPTION | |
| | Fourteen (14) pieces of paper that are to contain drugs on them. |
| | State |
| | vs. |
| | Gerald Gallup |
| | 44–3Y |
| SIGNATURE | Wittmer |

Were it not for the fact that Gallup admitted that he had sold LSD to Craff, we would reverse his conviction on this issue. Generally, the admission of incriminating evidence with an evidence tag still attached is prejudicial error. *State v. Shultz*, 231 N.W.2d 585, 587 (Iowa 1975); *State v. Branch*, 222 N.W.2d 423, 427 (Iowa 1974). Such a tag is clearly hearsay. *Branch*, 222 N.W.2d at 426. And, in addition, the tag has the effect of unduly emphasizing the State's evidence because it is "a neat condensation of the [State's] whole case against the defendant." *Id.* at 427 (citation omitted), *accord Shultz*, 231 N.W.2d at 587. So even though recitals on the tag are merely cumulative of the State's evidence, prejudicial error can still occur. *Shultz*, 231 N.W.2d at 587; *Branch*, 222 N.W.2d at 427.

Here, because of Gallup's admission, we think any error created by admission of the tag was harmless. In *Shultz* and *Branch*, there was no such admission. However, we take this opportunity to remind the bench and the bar that

> [o]nce an exhibit has been received in evidence, no proper purpose exists for leaving attached to it an identification tag which summarizes the State's testimony regarding the exhibit.

*Shultz*, 231 N.W.2d at 587.

### III. The Constitutional Challenges to Iowa Code Chapter 421A.

Gallup challenged the validity of chapter 421A through a pretrial motion to dismiss the trial information. He alleged three federal constitutional infirmities: (1) double jeopardy, (2) self-incrimination, and (3) denial of due process. The district court overruled the motion in its entirety.

Our review of constitutional issues is de novo. *State v. Fox*, 491 N.W.2d 527, 530 (Iowa 1992). Statutes are presumed to be constitutional. *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 348 (Iowa 1991). This presumption places a heavy burden of proof upon one challenging the constitutionality of a statute. *Id.* We engage in any reasonable construction to uphold a statute against a constitutional challenge. *State v. Mehner*, 480 N.W.2d 872, 878 (Iowa 1992) (citation omitted).

A. *Double jeopardy.* The jury found Gallup guilty of delivery of a controlled substance and distribution of a taxable substance without a drug tax stamp. The district court pronounced separate sentences, enhanced them, and then ran the sentences concurrently.

Gallup's first constitutional challenge to Iowa Code chapter 421A is grounded on double jeopardy. Gallup's complaint is that chapter 421A infringes on his Fifth Amendment protection under the Double Jeopardy Clause against multiple punishments for the same offense. According to him chapter 421A "mak[es] everyone who is charged with delivery of a controlled substance guilty of a second felony, thereby giving the State two bites of the apple."

The Double Jeopardy Clause of the federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see State v. McKettrick*, 480 N.W.2d 52, 56 (Iowa 1992). The Fifth Amendment Double Jeopardy Clause protects against, among other things, multiple punishments for the same offense. *State v. Lange*, 495 N.W.2d 105, 106 (Iowa 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969)). This protection is enforceable against the states through the Fourteenth Amendment to the federal Constitution. *McKettrick*, 480 N.W.2d at 56.

So we must determine if the offenses charged—the delivery offense and the drug tax stamp offense—involve essentially the same offense. In short, we must determine whether one of the offenses is a lesser included offense of the other. In doing so we apply the legal elements test articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and implemented by this court in *State v. Goff*, 342 N.W.2d 830 (Iowa 1983). In *Goff* we said that

> [i]f the greater offense cannot be committed without committing the lesser offense, the lesser offense is a legally in-

cluded offense. On the contrary, if the greater offense can be committed without committing the lesser offense, the lesser offense is not legally an included offense.

*Goff,* 342 N.W.2d at 835.

The essential elements of each offense are:

**Iowa Code section 204.401(1)(b)(5)**

(1) intentional manufacture <u>delivery</u>, or possession <u>of</u>

(2) <u>not more than ten grams</u> of a mixture or substance containing a detectable amount <u>of LSD</u>.

(Emphasis added.)

**Iowa Code section 421A.12**

(1) <u>unlawful</u> possession, <u>distribution</u> or offer to sell

(2) <u>ten</u> or more dosage <u>units of LSD</u>

(3) without a stamp, label or other official indicia evidencing that the tax imposed by chapter 421A has been paid.

(Emphasis added.)

---

"Intentional delivery" in section 204.-401(1)(b)(5) corresponds with "unlawful distribution" in section 421A.12. "Not more than ten grams of ... LSD" in section 204.401(1)(b)(5) corresponds with "ten ... units of LSD" in section 421A.12. All of the essential elements of the delivery offense are included in the legal elements of the drug tax stamp offense.

■ The drug tax stamp offense cannot be committed without committing the delivery offense. So delivery is a lesser included offense of the the the drug tax stamp offense. And it makes no difference that the lesser included offense here carries a higher penalty than the greater offense. (Delivery carries a twenty-five year indeterminate sentence. *See* Iowa Code §§ 204.-401(1)(b)(5), 902.9(1). The drug tax stamp offense carries a five year indeterminate sentence. *See* Iowa Code §§ 421A.12, 902.-9(4).) *See also State v. Habhab,* 209 N.W.2d 73, 74 (Iowa 1973) (possible penalty for criminal violation is not material to a determination of whether one offense is included within another). Our lesser included offense analysis here is consistent with similar analyses involving chapter 204 and chapter 421A violations. *See Lange,* 495 N.W.2d at 107 (manufacture of a controlled substance under Iowa Code section 204.401(1)(d) is a lesser included offense of section 421A.12); *State v. Franzen,* 495 N.W.2d 714, 717 (Iowa 1993) (possession of a controlled substance under Iowa Code

section 204.401(3) is a lesser included offense of section 421A.12).

But the analysis does not stop here. In *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Supreme Court spelled out when *Blockburger* is determinative in the multiple punishment context.

In *Hunter,* the Supreme Court reversed a Missouri supreme court ruling premised on *Blockburger.* Using the *Blockburger* legal elements test, the Missouri court construed two statutes as defining the same offense. The Missouri court determined that cumulative sentences under these statutes violated the Double Jeopardy Clause. The Missouri court reached this conclusion despite another statutory section expressly authorizing multiple punishment.

In reversing the Missouri court's decision, the Supreme Court held that

simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction ... is not a constitutional rule requiring courts to negate clearly expressed legislative intent.... Legislatures, not courts, prescribe the scope of punishments.

*Id.* at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543–44.

■ In other words, in the context of multiple punishments, satisfaction of the *Blockburger* legal elements test is determinative of double jeopardy only when legislative intent is not clearly expressed by statute:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, *regardless of whether those two statutes proscribe the "same" conduct under Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d at 544 (emphasis added).

■ So the question we must now answer is whether the legislature intended that a person convicted under section 204.-401(1)(b)(5) and section 421A.12 be punished for each offense. The following language in Iowa Code section 421A.5 convinces us that this was the legislature's intent:

> This chapter *does not provide in any manner a defense or affirmative defense* to or immunity for a dealer *from criminal prosecution* pursuant to Iowa law.

(Emphasis added.)

Clearly, the main thrust of section 421A.5 is that compliance with the requirements of chapter 421A does not insulate a dealer who distributes a taxable substance like LSD from prosecution or conviction under Iowa law. *See* Iowa Code ch. 204 (Uniform Controlled Substances Act). But section 421A.12 accomplishes more than this. Section 421A.12 authorizes conviction and punishment for failure to attach the drug tax stamp. Because chapter 421A does not insulate one from criminal prosecution under Iowa law and because chapter 421A contains its own penal provision under section 421A.12, we construe section 421A.5 to mean that prosecution under section 421A.12 was not intended to bar additional prosecution under Iowa law, including the Uniform Controlled Substances Act.

Having authorized additional conviction, surely the legislature also intended that additional punishment could be imposed. A conviction is meaningless without a judgment of conviction. *See* Iowa R.Crim.P. 22(3)(d). Punishment and sentence are incorporated in the judgment. *See State v. Iowa Dist. Court*, 308 N.W.2d 27, 30 (Iowa 1981) ("Sentencing is an independent function that follows adjudication of guilt; it is the sole duty of the judiciary, subject to statutory prescriptions of the legislature."). So, as is true in federal court, "the sentence is a necessary component of a judgment of conviction." *Ball v. United States*, 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740, 746 (1985). Like Congress, our legislature does not create criminal offenses without sentencing components. *See id.* at 861, 105 S.Ct. at 1672, 84 L.Ed.2d at 746.

In expressly authorizing conviction under the criminal laws of Iowa—notwithstanding conviction under the penal provision in section 421A.12—the legislature can only have intended to authorize additional punishment as well. One court reached the same conclusion and allowed cumulative punishment under a provision almost identical to section 421A.5 and involving statutory provisions similar to chapters 204 and 421A. *See Ex parte Kopecky*, 821 S.W.2d 957 (Tex.Crim.App.1992).

In sum, our legislature authorized cumulative punishment under two statutes. Regardless of whether those statutes proscribe the "same" conduct under *Blockburger*, our task of statutory construction is at an end. The prosecutor may seek and the district court may impose cumulative punishment under such statutes in a single trial. *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d at 544.

■ B. *Self-incrimination.* Gallup contends that chapter 421A violates his Fifth Amendment right against self-incrimination. In support of his contention, Gallup argues that chapter 421A does not contain sufficient procedural safeguards to prevent disclosure of his own criminal activity.

Recently, we held that chapter 421A does not violate rights against self-incrimination.

*See State v. Godbersen,* 493 N.W.2d 852, 857 (Iowa 1992). We carefully explained there how Iowa Code section 421A.10 assures anonymity to dealers purchasing drug tax stamps. And, for that reason, we upheld chapter · 421A against a Fifth Amendment challenge like the one here. *Id.* We think *Godbersen* controls here, and we therefore reject Gallup's Fifth Amendment challenge.

C. *Due process.* Gallup's final constitutional challenge to chapter 421A focuses on an alleged violation of the Due Process Clause in the Fifth Amendment to the federal Constitution. That clause simply provides that "[n]o person shall ... be deprived of ... property, without due process of law." U.S. Const. amend. V. Gallup thinks the taxing provisions of chapter 421A work a confiscatory taking of property and deprive criminal defendants of property without due process of law. He bases this on his claim that the tax here is grossly disproportionate to the value of the drugs he was convicted of distributing. What he is essentially saying is that the tax is not a tax at all, but an additional punishment.

In *United States v. Sanchez,* 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950), the Supreme Court upheld a federal marijuana tax statute (now repealed) against a challenge similar to the one Gallup mounts here. The statute required transferees to pay a special tax ranging from $1 to $24 and to register before receiving any transfer of marijuana to them. On such transfers the tax was $1 per ounce. In those instances where the transfer was made without payment of the special tax and registration, the statute imposed a tax of $100 per ounce. The Court upheld the $100 tax despite its regulatory effect and its close resemblance to a penalty. *Id.* at 43–45, 71 S.Ct. at 109–10, 95 L.Ed. at 49–50. The Court gave the following two reasons for its holding.

One, a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed, even though the revenue obtained is obviously negligible or the revenue purpose of the tax is secondary. *Id.* at 44, 71 S.Ct. at 110, 95 L.Ed. at 49. The tax in question was a legitimate exercise of Congress' taxing power despite its collateral regulatory purpose and effect. *Id.* at 45, 71 S.Ct. at 110, 95 L.Ed. at 50.

And, two, the tax levied under the statute was not conditioned upon the commission of a crime. The tax was on the transfer of the marijuana. The taxing statute did not per se make such a transfer a crime; the failure to pay the tax gave rise to the liability. *Id.* For that reason the tax was considered a civil, rather than a criminal, sanction. In the statute Congress provided a civil procedure for the collection of the tax, which indicated Congress' intention that the tax be treated like a civil sanction. *Id.*

The Court found a rational basis for the severity of the tax resulting from the failure to pay the original tax and register:

> Nor is the civil character of the tax imposed by § 2590(a)(2) [$100 per ounce] altered by its severity in relation to that assessed by § 2590(a)(1) [$1 per ounce]. The difference has a rational foundation. Unregistered persons are not likely to procure the required order form prior to transfer or pay the required tax. Free of sanctions, dealers would be prone to accommodate such persons in their unlawful activity. The imposition of equally severe tax burdens on such transferors is reasonably adapted to secure payment of the tax by transferees or stop transfers to unregistered persons, as well as to provide an additional source from which the expense of unearthing clandestine transfers can be recovered.

*Id.* at 45–46, 71 S.Ct. at 110, 95 L.Ed. at 50.

▮ Here Iowa Code section 421A.7(2) imposes on dealers an excise tax "on each gram or portion of a gram of any taxable substance sold by weight other than marijuana, two hundred fifty dollars." A dealer who does not pay the tax is subject to a penalty equal to the amount of tax imposed by section 421A.7, which in this case would be an additional two hundred fifty dollars. *See* Iowa Code § 421A.12. Chapter 421A provides a civil procedure for the collection

of the tax and penalty. *See* Iowa Code § 421A.9. This is indicative of legislative intent to treat the tax and penalty as a civil sanction.

Finally, the chapter 421A tax and penalty are not conditioned on the commission of a crime. The tax arises because of the transfer of a controlled substance. *See* Iowa Code § 421A.7. The penalty arises because of the failure to pay the tax. *See* Iowa Code § 421A.12. Although chapter 421A makes it a crime to transfer such substance without a drug tax stamp affixed to it, it does not per se make the transfer of the substance a crime. *See* Iowa Code § 421A.12. Chapter 204 makes the transfer a crime.

We see no substantial difference between chapter 421A and the federal marijuana statute that was upheld in *Sanchez.* We view the chapter 421A tax and penalty as civil, rather than as criminal, sanctions and as a proper exercise of the State's taxing power.

Obviously one purpose of the chapter 421A tax and penalty is to deter the sale of controlled substances and to make law breaking less profitable. And, obviously, the amount of revenue to be realized is probably negligible. None of these reasons, however, are enough in our view to brand the chapter 421A tax and penalty as violative of due process.

The district court correctly overruled the motion to dismiss raising these three constitutional challenges.

IV. *Failure to Merge the Sentences.*

As we said, the district court sentenced Gallup to two separate terms on the counts of delivery of a controlled substance and distribution of a controlled substance without a drug tax stamp. Gallup contends this sentence is a violation of Iowa Code section 701.9, which provides:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this

section, the court shall enter judgment of guilty of the greater offense only.

In support of his contention, Gallup urges that the delivery offense is a lesser included offense of the drug tax stamp offense and for that reason section 701.9 precludes judgment of conviction and sentence on both offenses. Gallup insists that the district court should have entered judgment only on the greater offense: the drug tax stamp violation. For this reason, Gallup concludes, the sentence is void and should be set aside. *See* Iowa R.Crim.P. 23(5).

Section 701.9 codifies the double jeopardy protection against cumulative punishment. In division IIIA of this opinion, we determined that the legislature intended to punish cumulatively violations of section 204.401(1)(b)(3) (the delivery offense) of the Uniform Controlled Substances Act and section 421A.12 (the drug tax stamp offense). Because the legislature intended cumulative punishment, no double jeopardy violation is present in this case. For that reason, section 701.9 is not applicable and no merger is required.

■■■ The lesser included offense analysis in division IIIA is solely for the purpose of determining whether the Double Jeopardy Clause is offended. When a prosecutor charges a chapter 204 offense and a chapter 421A offense in separate counts, district courts should not submit the former to the jury as a lesser included offense of the latter. Rather, district courts should submit these offenses separately. In the event of conviction on both offenses, district courts should not apply the merger provision of section 701.9 but should, instead, render sentence on each conviction.

V. *Disposition.*

Our analysis leads us to four conclusions.

First, under the objective test, the evidence was sufficient to disprove Gallup's entrapment defense. Second, although we generally condemn the admission of evidence tags as prejudicial error, any prejudice here was rendered harmless by Gal-

lup's admission of guilt. Third, Iowa Code chapter 421A does not violate Gallup's federal constitutional protection against double jeopardy and self-incrimination. And that chapter does not offend his right to due process. Last, the separate sentences imposed on Gallup for offenses under Iowa Code sections 204.401(1)(b)(5) and 421A.12 were legal.

For these reasons we do not disturb the judgment of conviction and sentence, and affirm.

**AFFIRMED.**