**STATE of Iowa, Appellee,**

v.

**Jerry Lee LEWIS, Appellant.**

**No. 93–157.**

Supreme Court of Iowa.

March 23, 1994.

John O. Moeller, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., William E. Davis, Co. Atty. and Realff H. Ottesen, Asst. Co. Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

Jerry Lee Lewis appeals from judgment of conviction and sentence for criminal gang participation and terrorism. He raises four issues. First, he contends there was insufficient evidence that he was engaged in criminal gang participation and terrorism. Second, he thinks there was error in the way the district court instructed the jury regarding criminal gang participation. Third, he contends the district court imposed an illegal sentence when it imposed consecutive sentences instead of merging the offenses. Last, he raises several ineffective assistance of counsel claims.

We think there was sufficient evidence to support convictions on both offenses. We also think there was no error in the way the district court instructed the jury. We find no double jeopardy violation in the consecutive sentences imposed for criminal gang participation and terrorism. We preserve Lewis' ineffective assistance of counsel claims for postconviction relief consideration. We therefore affirm.

## I. *Background Facts.*

Between 1:00 and 2:00 a.m. on August 12, 1992, several shots were fired into the Brenda Mason residence located at Twelfth and Marquette Streets in Davenport. Her home is located in an area that at the time was the turf of the Black Gangster Disciples gang. Although Mason, her son Terrance, and family friend Archie Bledsoe, Jr., were in the Mason home at the time of the incident, none of them were injured. They did not see their attackers. At the Mason home, investigating officers found four bullet holes, a spent twelve-gauge shotgun round, and one spent nine-millimeter casing.

Davenport police officers Kevin Marxen and Roy Zellmar were a half block west of the Mason home responding to an unrelated call when the shots were fired. Hearing four shots, they jumped into their squad car and drove at high speed in the direction of the shots. Approximately fifteen seconds later they saw a car speeding from the vicinity.

The officers followed the car, keeping it in sight at all times. About fifteen seconds later, the car stopped in an alley. Three males ran from the driver's side of the car. Two males exited from the passenger side and began to flee.

The officers ordered the two males who had exited from the passenger side to lie on the ground. One of these two individuals was Jerry Lee Lewis. Lewis—to no avail—tried to convince the officers that he had jumped into the car after the shots were fired. Lewis was breathing heavily and sweating, as was his companion.

The officers searched the car and found (1) an unloaded standard length shotgun, (2) a twenty-five caliber semiautomatic pistol, and (3) a nine-millimeter handgun with a round jammed in the action. The officers also found a third male hiding under a hedgerow near the car. Beside him was a twelve-gauge semiautomatic sawed-off shotgun containing several rounds.

During the course of the investigation of this incident, the police determined that the drive-by shooting at the Mason home was gang related. It was carried out in retaliation for a shooting that had taken place at the home of a co-defendant's mother two days earlier. Lewis and his co-defendants were identified as members of the Vice Lords street gang.

## II. *Background Proceedings.*

The State filed a three-count trial information against Lewis. Count I charged Lewis with terrorism. See Iowa Code § 708.6 (1991). Count II charged Lewis with criminal gang participation. See Iowa Code § 723A.2. Count III charged Lewis with unauthorized possession of an offensive weapon. See Iowa Code § 724.3.

At his jury trial, Lewis moved for judgment of acquittal at the close of the State's case and again after the presentation of all the evidence. The court denied both motions.

The jury found Lewis guilty of terrorism and criminal gang participation. The jury's inability to reach a verdict on the unauthorized possession of an offensive weapon count resulted in a mistrial as to that count. The State dismissed this last count at sentencing.

At the sentencing hearing, the district court sentenced Lewis to indeterminate five year terms on each of the two remaining counts. Later, the court set aside a minimum sentence imposed for use of a firearm. See Iowa Code § 902.7. This was done on Lewis' motion to correct sentence because of the State's failure to allege use of a firearm. See Iowa R.Crim.P. 6(6).

Lewis appeals from the conviction and sentence for criminal gang participation and terrorism.

## III. *Sufficiency of the Evidence.*

At the close of the State's case and again at the close of all the evidence, Lewis moved for judgment of acquittal as to the terrorism and criminal gang participation counts. The district court overruled both motions. Lewis argued then, as he does now, that there was not sufficient evidence to support a conviction on those two counts.

■ Our review is for errors at law. Iowa R.App.P. 4. The jury's verdict is binding on us unless there was not substantial evidence

to support it. In determining whether there was substantial evidence, we review the record in the light most favorable to the State. Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *State v. Taft,* 506 N.W.2d 757, 762 (Iowa 1993). With these principles in mind we examine each conviction separately.

■ A. *Terrorism.* Iowa Code section 708.6 pertinently defines terrorism as follows:

> A person commits a class "D" felony when the person, with the intent to injure or provoke fear or anger in another, shoots ... at [or] into ... a building ... occupied by another person ... and thereby places the occupants ... in reasonable apprehension of serious injury....

The evidence is clear that someone committed terrorism at the time and place in question. Lewis, however, contends the evidence is not sufficient to prove that he did it.

The State relied on an aiding and abetting theory to establish the terrorism count against Lewis. Iowa Code section 703.1 makes an aider and abettor culpable for the crime of the principal. The aider and abettor is to be indicted, tried, and punished as a principal. *See* Iowa Code § 703.1.

To convict one of a crime on the theory of aiding and abetting, the State must produce substantial evidence that the accused

> assented to or lent countenance and approval to the criminal act either by active participation in it or by some manner encouraging it prior to or at the time of its commission.

*State v. Lott,* 255 N.W.2d 105, 107 (Iowa 1977). It is true the State must prove the accused knew of the crime at or before its commission. But such proof need not be—and frequently cannot be—established by direct proof. The proof may be either direct or circumstantial. *State v. Buttolph,* 204 N.W.2d 824, 825 (Iowa 1972).

■ Although such knowledge is essential, neither knowledge nor proximity to the scene is—standing alone—enough to prove aiding and abetting. *State v. Vesey,* 241 N.W.2d 888, 891 (Iowa 1976). But—as the State points out—such factors in combination with circumstantial evidence such as "presence, companionship, and conduct before and after the offense is committed" may be enough from which to infer a defendant's participation in the crime. *State v. Miles,* 346 N.W.2d 517, 520 (Iowa 1984).

In addition, "[g]uilt of a person charged with aiding and abetting must be determined upon the facts which show [the person's] part in the crime and does not depend upon another's degree of guilt." *State v. Fetters,* 202 N.W.2d 84, 90 (Iowa 1972). But when—as here—specific intent is an element of the crime charged, "a person may be convicted on a theory of aiding and abetting if [the person] participates either with the requisite intent ... or with knowledge that the principal possesses the required intent." *Lott,* 255 N.W.2d at 109; *see also* 1 Iowa Criminal Jury Instructions 200.8 cmt. (1988).

Lewis thinks the evidence was not sufficient to convict him as an aider and abettor. He argues that the evidence—viewed in the light most favorable to the State—shows only that he (1) was present at the scene of the crime and shortly thereafter and (2) possibly had knowledge of the crime before it happened.

In support of his contention Lewis argues that (1) no physical evidence was introduced linking Lewis to possession of any of the guns found at the scene, (2) no eyewitness testimony was offered, and (3) no confessions or admissions were obtained. It is true that fingerprint and gun powder tests on the weapons were inconclusive. It is also true that no one testified that they actually saw the individuals who did the shooting. And, as Lewis says, he did not admit any participation in the shooting.

Nevertheless, we think there was substantial evidence from which the jury could reasonably infer that Lewis aided and abetted the drive-by shooting. Officer Henry S. Hawkins of the Davenport police department is a certified gang crime investigator and a recognized expert on criminal gang activity. He testified that on the night of the incident in question, he was aware that a drive-by shooting was imminent. He had learned this

from his contacts in the community, including one of Lewis' co-defendants. According to Hawkins "[i]t was understood throughout Davenport that something was going to happen."

Evidence was also presented as to Lewis' membership in the Vice Lords, a rival gang of the Black Gangster Disciples. At the trial Lewis admitted, recanted, then reaffirmed that he was a member of the Vice Lords.

Lewis was in a car with other Vice Lords members when the car was stopped by officers Marxen and Zellmar. Both officers testified to their close proximity to the crime scene and that they sighted the car within seconds of hearing the shots fired. Both stated they kept the car in sight at all times until it pulled over. Officer Marxen stated the car did not have time to stop and take on a passenger between the time the shots were fired and the time the officers first spotted the car. Both officers stated the car did not stop between the time they first sighted it and the time it pulled over.

From all of this evidence the jury could reasonably infer that Lewis was present at the crime scene when the shooting took place.

Three weapons—two matching ballistics evidence at the Mason home—were found in the car. This, when coupled with (1) Lewis' admitted membership in the Vice Lords, (2) his presence in the car when it was stopped, (3) the presence of other Vice Lords members in the car, and (4) his attempt to elude the officers after the car was stopped, is substantial evidence to support the jury's conclusion. That is, that Lewis accompanied his co-defendants to the Mason home with the intent to participate in a drive-by shooting. Once there, Lewis either (1) actively participated in the shooting or (2) encouraged it. While the facts might not individually support Lewis' guilt on the terrorism charge, in total they do.

B. *Criminal gang participation.* Under Iowa Code section 723A.2,

[a] person who actively participates in or is a member of a criminal street gang and who willfully aids and abets any criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang, commits a class "D" felony.

Iowa Code section 723A.1(2) defines a criminal street gang as

any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more criminal acts, which has an identifiable name or identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.

Iowa Code section 723A.1(3) defines a pattern of criminal gang activity as

the commission, attempt to commit, conspiracy to commit, or solicitation of two or more criminal acts, provided the criminal acts were committed on separate dates or by two or more persons who are members of, or belong to, the same criminal street gang.

Iowa Code section 723A.1(1) pertinently defines "criminal acts" as used in Iowa Code chapter 723A as

a. An offense constituting a violation of section 204.401 involving a controlled substance, a counterfeit substance, or a simulated controlled substance.

. . . .

f. Any other offense constituting a forcible felony as defined in section 702.11.

The State relied on the terrorism offense as the "criminal act" or underlying offense under section 723A.2 (offense of criminal gang participation). To establish a "pattern of criminal gang activity" under section 723A.1(3), the State relied on the offenses of delivery of a controlled substance and willful injury. *See* Iowa Code §§ 723A.1(1)(a) (controlled substance) and 723A.1(1)(f) (forcible felony).

Lewis reasserts his argument against his conviction for terrorism in his claim that there was not substantial evidence that he was guilty of criminal gang participation. Having disposed of this argument in division IIIA, we consider only Lewis' remaining arguments. First, he contends the State failed

to prove that one of the primary purposes of the Vice Lords was to commit criminal acts. Second, he contends the State failed to show a pattern of criminal gang activity by the local Vice Lords gang.

■ 1. *Primary activities: the commission of one or more criminal acts.* Officer Hawkins testified that one of the features of a criminal street gang is that commission of one or more criminal acts is one of its primary purposes. He identified the Davenport Vice Lords as being a criminal street gang under this criterion. As the State points out, there was no objection to this testimony, but, in any event, it was relevant and admissible evidence concerning one of the Vice Lord's primary activities. *Cf. People v. Gamez*, 235 Cal.App.3d 957, 960–63, 286 Cal.Rptr. 894, 897–900 (1991) (police officer could properly offer expert opinion evidence regarding ongoing criminality of gangs; California criminal gang statute required evidence of gang's past criminal conduct and ongoing criminal nature). This testimony was substantial evidence to support a finding that one of the primary activities of the Vice Lords was the commission of one or more criminal acts.

■ 2. *Pattern of criminal gang activity.* Officer Hawkins testified that shortly before the drive-by shooting at the Mason home, a drug search warrant was executed at a residence in Davenport. Officers arrested several individuals at that location for possession of a controlled substance with intent to deliver. During the search, officers found a significant amount of Vice Lords literature.

Hawkins also testified that in 1991 he was present at a party in the Palmer College of Chiropractic auditorium. At the end of the party, a member of the Gangster Disciples performed a rap song belittling the Vice Lords. A Vice Lords member then performed a rap song belittling the Gangster Disciples. A fight ensued, with a Gangster Disciples member being assaulted to the point of almost losing an eye.

From this evidence the jury could reasonably find that at least two criminal acts were committed on separate dates by persons who are members of the same criminal gang, the Vice Lords. The criminal acts, of course, were possession of a controlled substance with intent to deliver and willful injury. Both offenses are within the statutory definition of "criminal acts." *See* Iowa Code §§ 723A.1(1)(a) (controlled substance) and 723A.1(1)(f) (forcible felony). Such a finding meets the definition for "pattern of criminal gang activity" in section 723A.1(3) and establishes the element, "pattern of criminal gang activity" in the definition of criminal street gang under section 723A.1(2).

For all the foregoing reasons, we conclude there was substantial record evidence from which the jury could find that Lewis was guilty of criminal gang participation.

### IV. *Jury Instructions.*

■ We find no merit in Lewis' contention—made in the district court and urged here—that the district court should have used traditional marshaling instructions for possession of a controlled substance with intent to deliver and willful injury. The district court in a definitional instruction set forth the elements of both offenses and left no doubt the jury had to find beyond a reasonable doubt that Vice Lords members committed these offenses on separate dates. That was sufficient.

### V. *Double Jeopardy.*

■ Lewis argues that his sentences for terrorism and criminal gang participation should be merged under federal double jeopardy principles and a state statutory merger provision. *See* U.S. Const. amend. V; Iowa Code § 701.9.

Because Lewis raises a constitutional issue, our review is de novo. *State v. Gallup*, 500 N.W.2d 437, 441 (Iowa 1993).

Following the jury's guilty verdicts on the terrorism and criminal gang participation offenses, the district court sentenced Lewis to indeterminate five year terms on each offense. The court then ran the sentences consecutively.

The Double Jeopardy Clause of the federal Constitution protects against, among other things, multiple punishments for the same offense. U.S. Const. amend. V; *Gallup*, 500 N.W.2d at 441 (citation omitted). The first

step in our double jeopardy analysis is to determine whether the offenses here—terrorism and criminal gang participation—involve the same offense. The test is whether one is a lesser included offense of the other. *Id.*

Terrorism is a lesser included offense of criminal gang participation. This is because, as submitted to the jury, terrorism is the "criminal act" or underlying offense for criminal gang participation. So under the charge to the jury, the greater offense—criminal gang participation—cannot be committed without also committing the lesser offense—terrorism. *Id.* at 441–42 (test for lesser included offense is whether greater offense cannot be committed without committing lesser offense). For purposes of double jeopardy analysis, then, the two offenses of which Lewis was convicted are the "same offense."

The second and last step in our double jeopardy analysis is to determine whether the legislature clearly indicated multiple punishments for the "same offense." If we find such an indication, then no double jeopardy violation occurs if such multiple punishments are imposed. *Id.* at 442–43.

The State strenuously argues that punishment for criminal gang participation, as a class D felony, is the same or less severe than is authorized for many of the crimes listed in section 723A.1 as the "criminal act" or underlying offense for criminal gang participation as defined in section 723A.2. So—the State says—in many cases a sentence only for criminal gang participation would not enhance a defendant's punishment; only multiple convictions and punishments could do that. A contrary interpretation, the State concludes, would gut the criminal gang statute and make it useless.

We agree with the State's arguments. In a recent case we found, in the context of a double jeopardy claim, a "clear indication" of a legislative intent against multiple punishment because of the very language of the two criminal statutes involved. *See State v. McKettrick*, 480 N.W.2d 52, 58 (Iowa 1992). In *McKettrick*, the defendant was convicted and sentenced for assault *with* intent to inflict serious injury and for assault *without* the intent to inflict serious injury. *Id.; see*

Iowa Code §§ 708.1, 708.2(1), 708.2(2). We held that, under the plain language of the statutes defining these two offenses, it was impossible for one to commit a single assault both with the intent to inflict a serious injury and without the intent to inflict a serious injury. *McKettrick*, 480 N.W.2d at 58.

We can use similar reasoning here. For example, under Lewis' contention, a prosecutor would probably never charge criminal gang participation using most of the underlying criminal acts in section 723A.1. This is because the sentence for the criminal acts used as the underlying offense for criminal gang participation would always be merged with the criminal gang participation sentence. In most cases the resulting sentence would be the same as, or less severe than, the sentence for criminal gang participation.

When the legislature enacts a statute, we must presume that it intended the "entire statute ... to be effective." Iowa Code § 4.4(2). We also presume the legislature intended "[a] just and reasonable result." Iowa Code § 4.4(3). These rules of statutory construction lead us to conclude the legislature clearly indicated an intent to allow multiple convictions and multiple punishments for criminal gang participation and for any of the "criminal acts" used as the underlying offense for criminal gang participation. So here there was no double jeopardy violation when the district court imposed consecutive sentences.

## VI. *Ineffective Assistance of Counsel.*

Lewis asserts several ineffective assistance of counsel claims. We do not address these. Rather, we preserve them for postconviction relief determination. This will allow Lewis' trial counsel the benefit of a full evidentiary hearing. *See State v. Fox*, 491 N.W.2d 527, 535 (Iowa 1992).

## VII. *Disposition.*

There was substantial evidence from which the jury could infer that Lewis was guilty of the crimes of terrorism and criminal gang participation. The jury instructions concerning criminal gang participation were proper. There was no double jeopardy violation be-

cause of the consecutive sentences imposed. We do preserve Lewis' ineffective assistance of counsel claims for postconviction relief consideration.

Finding no error, we affirm.

**AFFIRMED.**