**IN THE COURT OF APPEALS OF IOWA**

No. 17-0784
Filed October 10, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TRAVIS RAYMOND WAYNE WEST,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.


        The defendant appeals his convictions for involuntary manslaughter and delivery of a controlled substance.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant Attorney General, for appellee.


        Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Travis West and his brother visited a friend at her West Des Moines apartment. Early in the morning, they found the friend unresponsive in the bathroom. West called 911. The woman was transported to the hospital, where she died the same morning. Autopsy results confirmed the presence of lethal amounts of heroin in her system.

The State charged West with involuntary manslaughter and delivery of a controlled substance. A jury found him guilty as charged.

On appeal, West argues (1) the evidence was insufficient to support the findings of guilt, (2) the district court erred in admitting certain "bad acts" evidence, and (3) the district court erred by failing to merge West's convictions at sentencing.

## I.    *Sufficiency of the Evidence*

The jury was instructed that the State would have to prove the following elements of involuntary manslaughter:

> 1.   On or about June 5, 2015, the defendant recklessly committed the crime of delivery of a controlled substance.
> 2.   When the defendant committed the crime, the defendant unintentionally caused the death of [a woman].

The jury also was instructed the State would have to prove the following elements of delivery of a controlled substance:

> 1.   On or about June 5, 2015, the defendant delivered a controlled substance.
> 2.   The defendant knew that the substance delivered was heroin.

West argues "the evidence does not support a finding that he supplied the heroin used in the victim's fatal drug overdose." A reasonable juror could have found otherwise.

West agreed to be interviewed by West Des Moines police and a recording of the interview was admitted into evidence. During the interview, West admitted he supplied heroin to the woman on one prior occasion. He also admitted taking her to the hospital the previous summer after she overdosed on heroin. Although he categorically denied supplying the heroin that resulted in her death, his phone records disclosed early morning calls to his heroin supplier as well as post-911 calls to him.[1] The jury reasonably could have credited the records and his admission to supplying heroin in the past, over his vehement denial. *See State v. DeWitt*, 811 N.W.2d 460, 476 (Iowa 2012) ("[C]redibility determinations are an essential function of the fact finder."). Substantial evidence supports a finding that West supplied the heroin that resulted in the woman's death. *See id.* at 477 (setting forth the standard of review).

## II. *Admissibility of Evidence*

Before trial, West filed a motion in limine seeking to exclude "[a]ny reference to prior convictions or bad acts" as well as "[e]vidence regarding cell phone records, or any reference to the number and times of phone calls that [he] had made to a person the State believes is [his] source of heroin." Following a hearing, the district court denied the motion. At the beginning of trial, the court confirmed an intent to abide by the earlier ruling.

---

[1] West argues the phone records constituted inadmissible bad acts evidence, a contention we address below. Even if the evidence were deemed inadmissible, we would be obliged to consider it in evaluating the sufficiency of the evidence to support the jury's finding of guilt. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003) ("In determining whether retrial is permissible all the evidence admitted during the trial, including erroneously admitted evidence, must be considered.").

West now challenges the admission of (1) evidence relating to his presence "at the victim's previous heroin overdose," (2) "evidence that he supplied the victim with drugs in the past," and (3) "evidence that he had been in contact with his drug dealer around the time of the victim's death." In his view, this "prior-bad-acts evidence" was unduly prejudicial.[2] *See* Iowa Rs. Evid. 5.403, 5.404(b).

A court considering evidence of prior bad acts must determine "whether the evidence of other crimes or bad acts is relevant to a legitimate factual issue in dispute." *State v. Mitchell*, 633 N.W.2d 295, 298 (Iowa 2001); Iowa R. Evid. 5.401. Next, the court must determine "if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Mitchell*, 633 N.W.2d at 298*; see* Iowa R. Evid. 5.403. In making this evaluation, the court is to consider

> (1) the need for the proffered evidence "in view of the issues and other available evidence," (2) whether there is clear proof it occurred, (3) the "strength or weakness of the prior-acts evidence in supporting the issue sought to be prove[d]," and (4) the degree to which the evidence would improperly influence the jury.

*State v. Einfeldt*, 914 N.W.2d 773, 784 (Iowa 2018) (citations omitted); *see also State v. Putman*, 848 N.W.2d 1, 8-9, n.2 (Iowa 2014) (stating we apply a "three-step analysis" and explaining confusion regarding whether the "clear proof" requirement is a third step). We review the district court's ruling for an abuse of discretion. *State v. Helmers*, 753 N.W.2d 565, 567, 569 (Iowa 2008).

---

[2] West alternatively raises the issue under an ineffective-assistance-of-counsel rubric. We need not use that framework because West adequately preserved error by obtaining a final ruling on the motion in limine. *See State v. Tangie*, 616 N.W.2d 564, 569 (Iowa 2000) ("[W]here a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation, the decision on the motion has the effect of a ruling.").

The evidence of West's presence at the scene of the prior overdose was highly relevant to the recklessness element of the involuntary manslaughter charge. *See State v. Hoon*, No. 11-0459, 2012 WL 836698, at *4 (Iowa Ct. App. Mar. 14, 2012) (considering defendant's knowledge of victim's "substance abuse problems" in finding "substantial evidence of" recklessness in the "delivery of methadodone"); *State v. Block*, No. 99-1242, 2000 WL 1587760, at *3 (Iowa Ct. App. Oct. 25, 2000) (finding sufficient evidence of recklessness based in part on the defendant's knowledge of the drugs' effects on the victim); *cf. State v. Miller*, 874 N.W.2d 659, 664–65 (Iowa Ct. App. 2015) (stating "[t]he mere delivery of heroin, without more, does not necessarily establish a sufficiently material increase in the probability of the proscribed harm" and "is inconsistent with the culpability aspect of recklessness"). West's recorded admission provided "clear proof." Although West's presence at the scene of the prior overdose was prejudicial,[3] the evidence was unlikely to trigger "overmastering hostility" towards West because it was "of a nature similar to that in the underlying charge." *State v. Reyes*, 744 N.W.2d 95, 100 (Iowa 2008). Additionally, West's act of taking the woman to the hospital following the prior overdose could be construed as a prior good act rather than a prior bad act. We conclude the district court did not abuse its discretion in admitting the evidence.

We turn to West's challenge to the admission of his statement that he previously supplied heroin to the woman. West likely waived this challenge. *See*

---

[3] In *State v. Liggins*, 524 N.W2d 181, 188-89 (Iowa 1994), the Iowa Supreme Court stated "[t]he admission of evidence of cocaine delivery and distribution is inherently prejudicial" because it appeals "to the jury's instinct to punish drug dealers."

*State v. Scheffert*, 910 N.W.2d 577, 583 (Iowa 2018) ("It is well-settled law that if a party fails to object to the admission of evidence, the party waives any ground for complaint, and the party cannot raise any error concerning its admission for the first time on appeal."). In his motion in limine, West did not seek to exclude evidence that he supplied heroin to the woman but only evidence of the *amount* of heroin he previously supplied. At the hearing on the motion, the prosecutor asked for clarification as to whether West was also challenging the act of supplying the heroin. Defense counsel responded, "I have no trouble with that. My client addresses that issue in his interview, which will be introduced as evidence. He does not speak to quantity." The court followed up with, "So your only concern . . . is that the State not produce some evidence as to specific quantities. Is that your concern?" Counsel responded, "Yes, Your Honor." In short, the defense essentially conceded that evidence of West's past act of supplying heroin was admissible. We have serious doubts as to whether West preserved error but we bypass our error-preservation concerns and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

Our analysis of the admission of evidence relating to West's presence at the scene of the prior overdose is equally applicable to the admission of evidence that he supplied heroin in the past. Although West's role as supplier could be construed as more prejudicial than his mere presence, the State's need for the evidence to establish recklessness far outstripped its prejudicial impact. We discern no abuse of discretion in the district court's ruling.

We are left with the cell phone records. We agree with the State that these records were not evidence of prior bad acts but evidence of the crimes with which

West was charged. *See State v. Frerichs*, No. 04-0665, 2005 WL 1630016, at *2 (Iowa Ct. App. July 13, 2005) ("While Frerichs on appeal characterizes the Spirit Lake evidence as evidence of 'other crimes' or 'prior bad acts,' we believe it is more appropriately considered as substantive evidence of the instant charge of possession of methamphetamine with intent to deliver."). The records were probative of delivery. Although West argues the phone numbers alone, without transcripts of the conversations, rendered the evidence unduly prejudicial, the numbers alone spoke volumes. As the district court stated:

> [T]here is circumstantial evidence that there were conversations, or a conversation, between a known heroin purchaser and a known heroin dealer and shortly thereafter the victim overdosed, and then there were further contacts between the heroin supplier and the defendant . . . . [I]nferentially, phone contact between a drug buyer and a drug seller raises a reasonable inference that the discussion was not about purchasing a Tesla automobile. It was about drug dealing. The jury can believe that or not believe that, but I see that there is a reasonable inference in that respect . . . . I understand the prejudicial effect just as I understand the prejudicial effect of references to prior drug interactions between the defendant and the victim, but I don't agree that it lacks relevance or that the relevance is overweighed by the prejudice.

We discern no abuse of discretion in the court's admission of the phone records.

### III.    *Merger*

West contends the district court erred in failing to merge his convictions for involuntary manslaughter and delivery of a controlled substance.

Iowa Code section 701.9 (2015) governs the analysis:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such a verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

To determine whether a public offense is "necessarily included in another public offense," we apply the legal-elements test. *See Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018). The legal-elements test is one indicator of legislative intent. *See State v. Ceretti*, 871 N.W.2d 88, 92 (Iowa 2015). If the crimes meet the legal-elements test, we then must determine "whether the legislature intended multiple punishments for both offenses." *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995) (examining merger issues under Double Jeopardy Clause).

West argues, "[I]t is impossible to commit the greater offense of involuntary manslaughter by commission of delivery of a controlled substance without also committing the lesser offense of delivery of a controlled substance." The State responds with an argument based on the jury instructions and the type of drug delivered to the woman. We believe the argument impermissibly draws on the facts of the case. *See Krogmann*, 914 N.W.2d at 295 (stating the legal-elements test is "purely a review of the legal elements and does not consider the facts of a particular case"). The State also asserts, "Only by allowing conviction and sentence for both crimes can the legislature's . . . intent prevail that both [crimes] have effect." We agree with the State's second argument.

Involuntary manslaughter by commission of a public offense is a class "D" felony. Iowa Code § 707.5(1)(a). Delivery of one hundred grams or less of a mixture or substance containing a detectable amount of heroin is a class "C" felony. *Id.* § 124.401(1)(c)(1). The differential punishment scheme reflects a legislative intent to impose multiple punishments for a public offense and for involuntary manslaughter predicated on the public offense. As the Iowa Supreme

Court stated in applying the merger doctrine under similar circumstances, "Having authorized additional conviction, surely the legislature also intended that additional punishment could be imposed." *State v. Gallup*, 500 N.W.2d 437, 443 (Iowa 1993).

West focuses on the following statement in *Gallup*: "[I]t makes no difference that the lesser included offense here carries a higher penalty than the greater offense." *Id.* at 442. That statement was made in the context of the court's application of the legal-elements test. As noted, the legal-elements test is only the first step in the merger analysis. *Halliburton*, 539 N.W.2d at 344. Even if the test is satisfied, courts are obligated to examine the legislative scheme. *Id.*

This court did just that in *State v. York*, No. 08-1490, 2009 WL 4115310, at *4 (Iowa Ct. App. Nov. 25, 2009). Although we concluded a conviction for child endangerment causing bodily injury merged with a conviction for involuntary manslaughter, we did so only after examining "whether the legislature 'clearly indicated' multiple punishments for both crimes." *Id.* at *3.

It is true that we found no clear indication of legislative intent to impose multiple punishments. *Id.* at *5. But, both crimes were class "D" feloines.,[4] whereas we are faced with a class "C" and a class "D" felony. In our view, this distinction makes a difference.[5]

---

[4] In *York*, the court cited Iowa Code section 726.6(5), which addresses the "serious injury" alternative to the crime. 2009 WL 4115310, at *3-4. Section 726.6(6) addresses the "bodily injury" alternative. The defendant in *York* was tried on the bodily-injury alternative.
[5] We recognize the crimes at issue in *Halliburton* were both class "D" felonies, yet the court declined to merge the convictions in light of the different purposes behind the two statutes. 539 N.W.2d at 344-45. In *York*, the court found no clear indication of legislative intent in the legislature's "generic reference" to "a necessary predicate offense." 2009 WL 4115310, at *4-5. Although the same generic reference is present here, we also are faced with a differential punishment scheme.

We conclude the conviction for delivery of a controlled substance did not merge with the conviction for involuntary manslaughter. We affirm West's judgment and sentence for both.

**AFFIRMED.**

Mullins, J. concurs; Doyle, J., concurs specially.

**DOYLE, Judge** (concurring specially).

I concur but feel compelled to comment on the merger issue. My sentiments mirror those of District Court Judge Robert Blink, who remarked at West's sentencing that:

> I am also deeply troubled by a statutory scheme that exposes you to a ten-year prison sentence for delivering heroin but a five-year prison sentence for the fact that your actions killed someone. To me, that does not make sense. That is not well-reasoned. But, here again, that is the choice of the legislature, not mine.

Additionally, although I am hard-pressed to say the majority has improperly applied the two-step *Halliburton* test, I question the propriety of the test. We are bound by supreme court precedent, so we must look to that court to revisit the issue. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990).

Under *Halliburton*, "[e]ven though a crime may meet the so-called *Blockburger* [*v. United States*, 284 U.S. 229 (1932)] test for lesser-included offenses, it may still be separately punished if legislative intent for multiple punishments is otherwise indicated." *State v. Bullock*, 638 N.W.2d 728, 732 (Iowa 2002) (citing *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995)). The two-step analysis set forth in *Halliburton* requires "we first decide whether the crimes meet the legal elements test for lesser included offenses. If they do, we then study whether the legislature intended multiple punishments for both offenses." 539 N.W.2d at 344 (citations omitted). The analysis is not without its critics. Justice Carter suggested "the court's approach to the double-punishment issue needs to be revised." *State v. Daniels*, 588 N.W.2d 682, 685 (Iowa 1998) (Carter, J., concurring specially). He commented that "[u]nfortunately, some of the language used by this court in applying the constitutional law to statutory claims under [Iowa

Code] section 701.9 has been inaccurate and confusing. Foremost in the confusion is a misguided two-step analysis described [in *Halliburton*]." *Id.* Justice Carter observed: "The two-step analysis that this court has been applying improperly allows included offenses under the *Blockburger* test to be separately punished based on this court's intuitive conclusions concerning a presumed legislative intent. This is an unwarranted judicial abrogation of the clear directive contained in [Iowa Code] section 701.9." *Id.* at 685-86 (footnote omitted); *see also State v. Lambert*, 612 N.W.2d 810, 816-17 (Iowa 2000) (Carter, J., concurring specially). I agree with Justice Carter's assessment that the *Halliburton* two-step analysis is misguided. But the issue will have to wait for another day. *See State v. Stewart*, 858 N.W.2d 17, 23 (Iowa 2015) ("We leave this issue for another day.").