# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3184

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *   Appeals from the United States
     v.                            *   District Court for the
                                   *   District of Nebraska.
Mark A. Gustafson,                 *
                                   *
          Appellant.               *

_____

No. 07-3359

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Salwa Ali Gustafson,               *
                                   *
          Appellant.               *

_____

Submitted: May 12, 2008
Filed: June 16, 2008

_____

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Mark A. Gustafson and Salwa Ali Gustafson, husband and wife, were each convicted by a jury of three counts of income tax evasion pursuant to 26 U.S.C. § 7201 and two counts of willful failure to file income tax returns pursuant to 26 U.S.C. § 7203. The District Court[1] sentenced each to thirty months in prison. The Gustafsons appeal their convictions, arguing that the District Court erred in excluding certain exhibits offered by the Gustafsons at trial, erred in instructing the jury, and deprived the Gustafsons of a fair trial by making remarks prejudicial to the Gustafsons.[2] We affirm.

I.

The Gustafsons married in 1993 and shortly thereafter opened a chiropractic clinic in Lincoln, Nebraska. Mark Gustafson, a licensed chiropractor, provided chiropractic services while Salwa Gustafson, a licensed nurse, acted as the clinic's business manager. As of the time of trial, neither Mark Gustafson nor Salwa Gustafson had filed a personal federal income tax return since filing a joint return for the 1994 tax year.

On March 22, 2006, a grand jury issued a five-count indictment naming Mark Gustafson and Salwa Gustafson as defendants in all five counts. Counts I, II, and III charged the Gustafsons with federal income tax evasion for the tax years 1998, 1999, and 2000, respectively. The indictment alleged that the Gustafsons willfully attempted to evade income tax due by failing to file personal income tax returns, by

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

[2]Mark Gustafson and Salwa Gustafson filed separate, but nearly identical, briefs challenging their convictions. We therefore consider their arguments together and refer to the appellants jointly as "the Gustafsons." Although the Gustafsons state that they also are appealing their sentences, they present no argument challenging the calculation or reasonableness of their sentences, and we deem any such challenge waived.

failing to pay income tax, and by attempting to conceal their income from the Internal Revenue Service (IRS) by transferring ownership of assets to fraudulent trusts, encumbering assets, removing money to offshore accounts, and using multiple bank accounts. The indictment further alleged that in 2002, after being notified that they were under investigation by the IRS, the Gustafsons filed abusive trust tax returns. Counts IV and V charged the Gustafsons with willful failure to file federal income tax returns for the tax years 1999 and 2000, respectively.

At trial, the evidence established that the IRS contacted the Gustafsons on numerous occasions about their tax obligations. The IRS first contacted the Gustafsons in October 1997, requesting tax returns for the years 1995 and 1996. On June 2, 1999, the IRS sent letters to the Gustafsons indicating that the Gustafsons had not filed tax returns for the years 1995, 1996, 1997, and 1998. On October 16, 2001, the IRS sent additional letters to the Gustafsons advising them that the IRS would begin to contact third parties and issue summonses to obtain information in an attempt to establish the Gustafsons' income and expenses for the non-filed tax years.

The government introduced evidence showing that the Gustafsons took a number of steps to hide their income from the IRS. First, in March 1998, shortly after they were first contacted by the IRS regarding their tax deficiencies, the Gustafsons began wiring money to an offshore bank account. Between 1998 and 2000, the Gustafsons wired more than $200,000 to offshore accounts. Second, from 1998 to 2000, the Gustafsons changed the name of the chiropractic clinic four times. Third, during that same period, Salwa Gustafson moved the clinic's bank account to three different banks. Fourth, the Gustafsons began putting their money and assets into trusts.

The Gustafsons' defense at trial was that they had a good-faith belief that the payment of federal income tax was not compulsory. The Gustafsons testified that they formed this belief after talking with other small-business owners, attending seminars, and researching the issue in legal casebooks and treatises (despite their having no legal

training).  The Gustafsons presented documentary evidence that they claimed to have relied upon in forming their belief.

The jury convicted both Mark Gustafson and Salwa Gustafson of each of the five counts charged.  The Gustafsons appeal.

## II.

The Gustafsons first challenge a number of the District Court's evidentiary rulings.  We review evidentiary rulings for abuse of discretion.  Spencer v. Young, 495 F.3d 945, 949 (8th Cir. 2007).  Even when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict.  United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994), cert. denied, 514 U.S. 1091 (1995).

At trial, the Gustafsons sought to introduce materials upon which they purportedly relied in forming a good-faith belief that they were not required to file income tax returns.[3]   These materials included a photocopy of the business trusts section of the legal treatise American Jurisprudence, Second Edition (defendants' exhibit 211C); documents defining terms set forth in Titles 26 and 28 of the United States Code and discussing Supreme Court decisions about persons over whom the federal government has jurisdiction (defendants' exhibits 211A and 211B); letters to the Gustafsons from the United States Attorney for the Southern District of Ohio informing them that Richard Parris[4] would be sentenced and that they had an

---

[3]Because 26 U.S.C. § 7201 and 26 U.S.C. § 7203 both have willfulness as an element of the offense, the Gustafsons could not have been properly convicted under either statute if they established a "good-faith misunderstanding of the law or a good-faith belief that [they were] not violating the law." Cheek v. United States, 498 U.S. 192, 201 (1991).

[4]Parris was the founder of Omega Tax Planning Group.  The Gustafsons hired Omega in 1995 to manage the chiropractic clinic's tax matters.  After the Gustafsons received a letter from the IRS in 1997 about unfiled tax returns, Parris told them that

-4-

opportunity to address the court on injury caused by Parris's crimes (defendants' exhibits 202, 203, and 204); and documents that Mark Gustafson provided the grand jury (defendants' exhibit 269). The District Court excluded these documents as either not relevant or lacking in foundation.

The Gustafsons contend that the excluded evidence was relevant and that the court erred by not admitting it. The Gustafsons have not shown, however, "how the excluded documents would have added new insight into the formation of [their] beliefs beyond the materials that were permitted into evidence." United States v. Willis, 277 F.3d 1026, 1033 (8th Cir. 2002). As in Willis, the Gustafsons "had been permitted to explain the source of [their] beliefs and to introduce other exhibits on which [they] relied." Id. The District Court permitted the defense to read Mark Gustafson's grand jury testimony into evidence. Mark Gustafson cited and summarized three cases that he contended supported his belief that he was not required to pay taxes. He stated that he and Salwa Gustafson had reviewed the law and that a provision of "the code" required the Secretary of the Treasury to inform them that taxes were owed. Tr. at 1013. He also testified that he and Salwa Gustafson studied the tax laws by reading books and articles on the internet. They also obtained information about tax law from a group called Save A Patriot. Salwa Gustafson testified at trial that she went with her husband to a seminar on tax laws presented by Save A Patriot. Salwa then testified in detail about a number of conversations that she had with different people relating to how to structure the chiropractic clinic as a business trust to avoid the legal obligation to pay taxes. She testified that she and Mark Gustafson went to a law library to research tax law. She identified the American Jurisprudence treatise on business trusts as something that they relied on in forming their belief that using business trusts to avoid paying taxes was legal. She further identified the documents offered as defendants' exhibits 211A and 211B and explained

the letter must have been sent by mistake and that he would contact the IRS on their behalf.

-5-

that they helped form her belief that the United States did not have "jurisdiction" over her for purposes of taxing her. Tr. at 1280.

It was proper for the District Court "to exclude evidence having no relevance or probative value with respect to willfulness." Cheek v. United States, 498 U.S. 192, 203 (1991). To the extent that any of the excluded documents may have been relevant, they were cumulative, and the District Court did not abuse its discretion by denying their admission. See Fed. R. Evid. 403; Willis, 277 F.3d at 1033. Moreover, the material interpreting statutes and legal opinions, as well as the legal opinions themselves, "would have had a high potential to confuse the jury and conflict with the court's responsibility to instruct on the law." Willis, 277 F.3d at 1033. The District Court gave the Gustafsons the opportunity to explain how these legal materials affected their beliefs, and the court did not err in excluding the materials themselves. Finally, we note that none of the District Court's evidentiary rulings affected the Gustafsons' substantial rights or could be said to have had more than a slight influence on the verdict. The evidence of the Gustafsons' guilt was substantial and we do not believe that the verdict would have been different had the documents been admitted.

III.

The Gustafsons next contend that the District Court erred in instructing the jury by (1) denying the Gustafsons' request for a particular instruction and (2) including an instruction over their objection. "We review the district court's decision to give or deny an instruction for abuse of discretion, considering the court's ruling in the context of the entire charge." United States v. Tucker, 137 F.3d 1016, 1036 (8th Cir. 1998). We look to "whether the instructions taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Willis, 277 F.3d at 1031 (internal quotations and citations omitted).

First, the Gustafsons argue that the District Court erred by refusing to instruct the jury, as the Gustafsons requested, "that in order for a defendant to evade payment

of taxes there must first be a formal assessment [of the amount owed] issued by the IRS." Br. of Appellant at 41. We reject this argument. The Gustafsons were entitled to an instruction conveying the substance of their request only if the request was "a correct statement of the law." Tucker, 137 F.3d at 1036. The Gustafsons' request was not.

The District Court instructed the jury that to convict a defendant of tax evasion under 26 U.S.C. § 7201, the government was required to prove beyond a reasonable doubt that the defendant "owed substantial income tax," "attempted to evade and defeat that tax," and "acted willfully." Jury Instruction No. 13. This instruction adequately stated the law and clearly set forth the three elements that the government needed to prove in order for the Gustafsons to be convicted of tax evasion. See Sansone v. United States, 380 U.S. 343, 351 (1965) (discussing the elements of tax evasion under § 7201); Willis, 277 F.3d at 1030 (same).

Contrary to the Gustafsons' assertion, United States v. Silkman, 156 F.3d 833 (8th Cir. 1998) (Silkman I), does not require the IRS to issue a tax assessment in order to meet its burden of proving the existence of a tax deficiency. The main issue in Silkman I was whether a tax assessment issued in a civil collections case is conclusive proof of a tax deficiency in a criminal tax evasion prosecution. Id. at 835. The court held that it was not. Id. at 835–36. In addressing an "additional issue[]" that "require[d] little discussion," the court also held that "an assessment is not a necessary element of a payment evasion charge." Id. at 836–37. Moreover, on appeal after remand, the court specifically addressed whether an accurate assessment was required in a criminal tax evasion case in order for the government to satisfy the tax deficiency element of the offense. United States v. Silkman, 220 F.3d 935, 937 (8th Cir. 2000) (Silkman II), cert. denied, 531 U.S. 1129 (2001). The court stated:

> When a taxpayer fails to file a return and then refuses to provide relevant information to the IRS, the agency . . . is not compelled to file a substitute return to trigger the assessment process. See Geiselman v. United States, 961 F.2d 1, 5 (1st Cir.), cert. denied, 506 U.S. 891

. . . (1992). Indeed, it is not even compelled to make a formal assessment when no return is filed, because any deficiency is deemed to arise by operation of law on the date a return should have been filed. See United States v. Dack, 747 F.2d 1172, 1174 (7th Cir. 1984).

Id. (emphasis omitted). Thus, it is clear in this Circuit that a defendant may be convicted under § 7201 even when the IRS has not issued an assessment of taxes owing. Because the Gustafsons' requested instruction to the contrary would have misled the jury on the law, the District Court did not abuse its discretion in declining to give it.

Second, the Gustafsons argue that the District Court abused its discretion by instructing the jury that federal law requires employers to withhold federal taxes from employees' wages. See Jury Instruction No. 7. The Gustafsons correctly note that this instruction did not discuss an element of any offense charged. The Gustafsons assert that the instruction therefore "served no purpose other than to confuse the jury and in essence . . . told the jury that the Gustafsons were in violation of a law that they were not charged with breaking." Br. of Appellant at 52.[5]

Instruction No. 7 stems from testimony given by two employees of the Gustafsons' chiropractic clinic. Dr. Paula Wiese testified on direct examination by the government's attorney that when she worked for the clinic in 1999, the Gustafsons did not withhold federal taxes from her paychecks. On cross-examination by the Gustafsons' attorney, Wiese testified that she had agreed in her employment contract with the clinic that the clinic would not be responsible for withholding federal taxes from her paycheck. Counsel for the Gustafsons then introduced the employment contract into evidence, which the court admitted over the government's objection that the contract "in effect is illegal." Tr. at 440. Testifying further, Wiese stated that she had agreed to determine her own tax liability and do her own taxes. The government

_____

[5]The Gustafsons do not contend that Instruction No. 7 was an incorrect statement of the law.

-8-

objected to this testimony. The District Court overruled the objection but indicated that it "may just have to instruct the jury on the validity of that provision" in the contract. Tr. at 441. When the Gustafsons' attorney moved to introduce a second employment contract between Wiese and the clinic containing a similar provision regarding taxes, the court admitted the second contract but indicated that it would "give the jury an instruction regarding that provision." Tr. at 443. Later in the trial, Danielle Dietrich similarly testified that when she worked as a secretary at the Gustafsons' clinic in 2000–2001, the Gustafsons did not withhold taxes from her wages.

Given the admission of testimony from Wiese and Dietrich regarding their arrangement with the Gustafsons and Wiese's employment contracts evidencing the arrangement, we cannot say that the District Court abused its discretion by giving Instruction No. 7. While the legality of the arrangement not to withhold federal taxes was not a direct issue in this case, the manner in which the Gustafsons conducted their business to evade the payment of their individual income taxes was an issue. After the government elicited testimony about the unusual approach that the Gustafsons took toward their employees' federal taxes, the Gustafsons' attorney introduced the employment contracts in an attempt to show that the arrangement had "the air of legitimacy." Tr. 1131. The District Court did not err in instructing the jury on what the law actually holds on this matter. Moreover, Instruction No. 7 was one of twenty-five instructions given to the jury. When we read the instructions as a whole, we conclude that they "fairly and adequately submitted the issues in the case to the jury." Willis, 277 F.3d at 1031 (internal quotations and citations omitted).

IV.

Finally, the Gustafsons argue that their convictions must be overturned because the District Court made comments throughout the trial and in the presence of the jury that prejudiced the Gustafsons and deprived them of a fair trial. "We have always been reluctant to disturb a judgment of conviction by reason of a few isolated, allegedly prejudicial comments of a trial judge, particularly in a long trial." United

States v. Van Dyke, 14 F.3d 415, 417 (8th Cir. 1994) (internal quotations and citation omitted). We "will balance and weigh the comments of the judge against the overall fairness of the trial, and will overturn a conviction only when the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case." United States v. Bamberg, 478 F.3d 934, 940–41 (8th Cir. 2007) (internal quotations and citation omitted), cert. denied, 128 S. Ct. 1650 (2008).

The Gustafsons give a few examples of comments made by the District Court that they argue could have led the jury to believe that the court was siding with the government. First, in responding to an objection during the opening statement of the Gustafsons' attorney, the court told the attorney to "[j]ust recite the events that occurred" and not to argue by characterizing events. Tr. at 50. After a second objection during the same opening statement, the court stated, "[Y]ou're giving everything in detail and I'm going to have to stop you in about eight minutes. You're going to have to finish your opening statement in about eight minutes." Id. at 53. A few minutes later, when defense counsel was forty minutes into his opening statement, the court asked defense counsel how much longer his opening statement was "going to go." Id. at 60. When the attorney answered ten minutes, the court ordered a twenty-minute recess. Id. Later, when the Gustafsons' attorney moved for the admission of certain exhibits, the District Court asked the attorney if he had prepared an exhibit list for the court, noting that an exhibit list would have helped the court. The Gustafsons also note that the District Court asked questions of certain government witnesses.

We have reviewed the trial transcript and conclude that the District Court's comments during the trial did not deprive the Gustafsons of a fair trial. We first note that the court instructed the jury not to "construe any statement, action, or ruling on my part in the trial of this case as an indication of any opinion on my part respecting the proper course of your verdicts." Jury Instruction No. 22. Most of the District Court's comments simply related to the orderly administration of the trial, over which the court had broad discretion. See United States v. Warfield, 97 F.3d 1014, 1028 (8th

Cir. 1996), cert. denied, 520 U.S. 1110 (1997). Moreover, the trial was somewhat lengthy, resulting in over 1500 pages of trial transcript. As in Warfield, when the few judicial statements complained about are considered in the context of the entire trial, "any prejudice which might have accrued did not deprive [the Gustafsons of their] right to a fair trial." Id. (discussing a trial consuming approximately 850 pages of trial transcript). Finally, it was appropriate for the District Court to ask questions of witnesses to clarify testimony and draw out facts necessary for a clear presentation of the issues. See United States v. Flying By, 511 F.3d 773, 777 (8th Cir. 2007). The fairness of the trial was not destroyed by the court's questioning. See id. Indeed, the District Court also instructed the jury not to assume that the court held "any opinion on the matters to which the questions related." Jury Instruction No. 22. We will not overturn the Gustafsons' convictions on this basis.

We affirm the judgments of the District Court.

_____