# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2684

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Joseph Eugene Robinson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 18, 2011
Filed: April 12, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Joseph Robinson was convicted of one count of conspiracy to distribute five grams or more of cocaine base ("crack cocaine"), a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), 846. The district court sentenced him to 360 months' imprisonment followed by 10 years of supervised release. Robinson appeals both his conviction and his sentence. For the reasons explained below, we affirm the conviction but vacate Robinson's sentence and remand for resentencing.

## I. BACKGROUND

On March 25, 2009, a federal grand jury returned a superseding indictment charging Robinson with one count of conspiracy to distribute crack cocaine between, at the latest, January 1, 2007, and August 28, 2008 ("Count I"), and with one count of distribution of crack cocaine on August 11, 2008 ("Count II"). Robinson entered pleas of not guilty and proceeded to trial. At trial, the Government introduced the testimony of, among others, Jamon Winfrey, an associate of Robinson's. Winfrey testified that, between 2006 and 2008, he regularly supplied Robinson with powder cocaine. He also taught Robinson to convert the powder cocaine to crack cocaine, which Robinson would then sell to others, typically in "[s]maller amounts, . . . eight balls, 3.5 grams, quarters, seven grams."[1] One of Robinson's acquaintances, Jerome Hall, also testified that he saw Winfrey converting powder cocaine to crack cocaine in Robinson's house while Robinson was present. Another acquaintance, Steven Curry, testified that he bought sixty-three grams of crack cocaine from Winfrey in a Burger King parking lot. According to Curry, Robinson was present in Winfrey's car during the transaction and took possession of the $1350 that Curry exchanged for the drugs.

In addition, Winfrey testified that he and Robinson would pool their money to buy powder cocaine and that he would sometimes store drugs at Robinson's house. Shayla Ousley, Winfrey's girlfriend, confirmed that she delivered packages of crack cocaine to Robinson on numerous occasions. Moreover, Anthony Long, an informant cooperating with the Drug Enforcement Administration ("DEA"), testified that Robinson accompanied Winfrey during an undercover purchase of crack cocaine.

---

[1] The term "quarter" denotes one quarter of an ounce of cocaine, and the term "eight ball" denotes one eighth of an ounce of cocaine. An ounce equals approximately 28.35 grams.

Winfrey confirmed Robinson's participation, testifying that Robinson had supplied twenty-one grams of crack cocaine for the transaction.

After the close of the evidence, the jury returned a verdict of guilty on Count I, making a specific finding that Robinson had conspired to distribute in excess of five grams of crack cocaine. Robinson was acquitted of Count II.

At sentencing, the district court found by a preponderance of the evidence that the conspiracy involved at least fifty grams of crack cocaine. The court also concluded that Robinson qualified as a career offender, *see* U.S.S.G. § 4B1.1, and that his prior conviction for a felony drug offense mandated a statutory minimum prison sentence of 20 years, *see* 21 U.S.C. § 841(b)(1)(A). Robinson's resulting advisory guidelines range was 360 months to life, based on a total offense level of 37 and a criminal history category of VI. The district court sentenced Robinson to 360 months' imprisonment. Robinson now appeals his conviction, challenging two evidentiary rulings. He also urges us to vacate his sentence.

## II. DISCUSSION

### A. Evidentiary Rulings

Robinson challenges two of the district court's evidentiary rulings, which we review for abuse of discretion. *See United States v. Gustafson*, 528 F.3d 587, 590 (8th Cir. 2008). "Even when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." *Id.* at 591.

Robinson first submits that the district court committed reversible error by admitting hearsay testimony from Timothy Starmer, a DEA agent, concerning the seizure of drug money from Anthony Phillips during a vehicle stop in Oklahoma.

Special Agent Starmer's testimony was introduced after both Winfrey and Ousley had described the same incident. Winfrey recounted an instance around "[the] end of 2007, early 2008" where Robinson contributed $5,000 to a pool for the purchase of cocaine totaling approximately $39,000. Winfrey estimated that the sum would purchase two or three kilograms of powder cocaine, and he testified that Robinson was to receive approximately nine ounces as his share. Phillips was tasked with transporting the money from Iowa to Texas. Winfrey testified that Phillips told him that the vehicle was stopped by police in Oklahoma City and that the police seized the drug money. Oulsey also testified that "[Phillips] went out of town to purchase crack cocaine, and . . . got stopped."

Robinson raised no objection to Winfrey's or Ousley's testimony regarding the seizure, but he objected to subsequent testimony about the incident from Special Agent Starmer as hearsay. *See* Fed. R. Evid. 801(c). The district court overruled Robinson's objection, and Special Agent Starmer testified that an Oklahoma police officer informed him that officers had stopped a car containing four individuals, one of whom was Anthony Phillips, and that "[t]here was approximately 39 to 40 thousand dollars in the vehicle." Special Agent Starmer mentioned neither Winfrey nor Robinson in connection with the seizure.

The Government concedes that the challenged testimony is hearsay but argues that reversal is not warranted because any error in its admission was harmless. We agree. "The admission of hearsay evidence that is cumulative of earlier trial testimony by the declarant or cumulative of other hearsay evidence to which no objection was made is not likely to influence the jury and is therefore harmless error." *United States v. Londondio*, 420 F.3d 777, 789 (8th Cir. 2005); *see also United States v. Melecio-Rodriguez*, 231 F.3d 1091, 1094 (8th Cir. 2000) (per curiam) ("An error in admitting testimony may be harmless if the testimony is corroborated by independent sources, or if it amounts to cumulative evidence on matters already before the jury."). Special Agent Starmer's hearsay testimony concerning the incident in Oklahoma mirrored

-4-

Winfrey's testimony. Although, like Special Agent Starmer, Winfrey acknowledged that he had no first-hand knowledge of the vehicle stop, Robinson did not object to Winfrey's testimony as hearsay. *See United States v. White*, 11 F.3d 1446, 1451 (8th Cir. 1993). Neither did Robinson object to Oulsey's hearsay testimony confirming the incident. Indeed, there is no indication that Robinson even disputed that the seizure occurred in the manner described.

Robinson counters that admission of Special Agent Starmer's testimony was not harmless, despite its cumulative nature, because the testimony "shore[d] up the credibility of Winfrey." This is not a case, however, "where that extra helping of evidence [is] so prejudicial as to warrant a new trial." *United States v. Bercier*, 506 F.3d 625, 633 (8th Cir. 2007) (quoting *United States v. Ramos-Caraballo*, 375 F.3d 797, 804 (8th Cir. 2004)). Special Agent Starmer merely echoed non-inculpatory tidbits of Winfrey's comprehensive, detailed, and unobjected-to account of the seizure in Oklahoma. Moreover, Winfrey's testimony was independently supported by Ousley, whose statements likewise failed to educe an objection on hearsay grounds. *See White*, 11 F.3d at 1451 (holding harmless the improper admission of a social worker's hearsay testimony concerning a child's report of sexual abuse where the credibility of the child's testimony was supported by other witnesses); *cf. United States v. Kenyon*, 397 F.3d 1071, 1082 (8th Cir. 2005) (holding that the improper admission of hearsay testimony concerning a child's report of sexual abuse warranted reversal where the child's otherwise uncorroborated testimony "was the sole basis for conviction" and the hearsay augmented the child's testimony "with additional detail in certain areas"). Finally, the record is replete with other evidence furnishing redoubtable support for the jury's finding of guilt beyond a reasonable doubt; Ousley, Hall, Curry, and Long independently recounted numerous instances where Robinson conspired with Winfrey to distribute crack cocaine. *See United States v. Smith*, 410 F.3d 426, 429-30 (8th Cir. 2005); *United States v. Torres-Galindo*, 206 F.3d 136, 141-42 (1st Cir. 2000). Consequently, we are confident that Special Agent Starmer's

duplicative testimony could not have had more than a slight influence on the outcome of the trial. *See Gustafson*, 528 F.3d at 591.

Robinson next challenges the admission of evidence of prior unlawful conduct, arguing that the district court abused its discretion under Fed. R. Evid. 404(b). During a 2006 encounter, Officer Chad Ruroden of the Des Moines Police Department discovered a small amount of crack cocaine in Robinson's navel, and at trial Robinson objected to the officer's testimony about the incident. The district court admitted the testimony and instructed the jury that the evidence was not admitted to show propensity, but for the limited purpose of showing knowledge and absence of mistake.

A district court acts within its sound discretion in admitting evidence of prior criminal or wrongful acts when "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002) (quoting *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000)). On appeal, Robinson does not contest the second and third enumerated considerations. With regard to the first prong, relevance, Robinson's general denial defense placed his state of mind at issue. *See United States v. Gipson*, 446 F.3d 828, 831 (8th Cir. 2006). It is settled in this circuit that "a prior conviction for distributing drugs, and even the possession of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." *Frazier*, 280 F.3d at 847; *see also United States v. Logan*, 121 F.3d 1172, 1178 (8th Cir. 1997) ("This is so even if the defendant has not raised a defense based on lack of knowledge or lack of intent."). Morever, the potential prejudicial impact of Officer Ruroden's testimony was assuaged by the district court's thorough instruction to the jury on the limited purpose of the testimony. *See Frazier*, 280 F.3d at 848. Accordingly, we conclude that the district court did not abuse its discretion in admitting the officer's testimony.

**B. Sentencing**

Robinson challenges the district court's determination that his prior conviction for violating Iowa's drug tax stamp law qualifies as a prior "felony drug offense" subjecting him to the 20-year minimum sentence mandated by 21 U.S.C. § 841(b)(1)(A), and that the drug tax stamp conviction qualifies as a "controlled substance offense" under the career offender provision of the sentencing guidelines. In addition, Robinson challenges the substantive reasonableness of his sentence.

We review a district court's sentencing decisions for reasonableness, using "the familiar abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 46 (2007). Before reviewing the substantive reasonableness of a sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Id.* at 51. "In determining whether a procedural error has been committed, we review 'the district court's factual findings for clear error, and its interpretation and application of the guidelines, de novo.'" *United States v. Williams*, 627 F.3d 324, 327 (8th Cir. 2010) (quoting *United States v. Byas*, 581 F.3d 723, 725 (8th Cir. 2009)).

Robinson first argues that the district court erred by finding his conviction for violating Iowa's drug tax stamp law to be a prior "felony drug offense" for purposes of applying § 841(b)(1)(A). The district court, however, sentenced Robinson to a term of 360 months' imprisonment. Because the court's sentencing decision was not constrained by the 240-month statutory minimum, Robinson "lacks standing to challenge the applicability of the statutory minimum." *See United States v. Greer*, 607 F.3d 559, 565 (8th Cir.), *cert. denied*, 562 U.S ---, 131 S. Ct. 434 (2010).

Robinson next disputes the district court's determination that he qualifies as a "career offender" under U.S.S.G. § 4B1.1. A defendant is considered a career offender if he has two prior convictions for either a "controlled substance offense" or

a "crime of violence." § 4B1.1(a). The district court deemed Robinson a career offender, based on a 1999 felony conviction for a crime of violence—conspiracy to commit terrorism—and a 2007 felony conviction for violating Iowa's drug tax stamp law, which it determined to be a controlled substance offense. On appeal, Robinson challenges only the court's determination that the drug tax stamp conviction qualifies as a controlled substance offense.

The sentencing guidelines define "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." § 4B1.2(b). A felony conviction for simple possession of a controlled substance does not qualify as a controlled substance offense under § 4B1.2. *Salinas v. United States*, 547 U.S. 188 (2006) (per curiam).

To determine whether a prior conviction qualifies as a controlled substance offense, the court must apply the "categorical approach," under which "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Begay*, 553 U.S. 137, 141 (2008). When the statute giving rise to the conviction criminalizes both conduct that does and does not qualify as a controlled substance offense, "we apply a modified categorical approach, in which a court 'may refer to the charging document, the terms of a plea agreement, jury instructions, or comparable judicial records,'" *United States v. Pearson*, 553 F.3d 1183, 1186 (8th Cir. 2010) (quoting *United States v. Montenegro-Recinos*, 424 F.3d 715, 717 (8th Cir. 2005)), in order to determine "which portion of the statute was the basis for conviction," *United States v. Ross*, 613 F.3d 805, 807 (8th Cir. 2010).

Iowa Code § 453B, the state's drug tax stamp law, provides that "[a] dealer shall not possess, distribute, or offer to sell a taxable substance unless the tax imposed under this chapter has been paid as evidenced by a stamp, label, or other official indicia permanently affixed to the taxable substance." § 453B.3. The Iowa Code defines "taxable substance" as "a controlled substance, a counterfeit substance, a simulated controlled substance, or marijuana, or a mixture of materials that contains a controlled substance, counterfeit substance, simulated controlled substance, or marijuana." § 453B.1(10). A "dealer" is defined as "any person who [unlawfully] ships, transports, or imports into this state or acquires, purchases, *possesses*, manufactures, or produces in this state [specified quantities of a taxable substance]." § 453B.1(3) (emphasis added).

As an initial matter, Robinson argues that § 453B falls wholly outside the sentencing guidelines' definition of "controlled substance offense" because it does not "prohibit" any conduct involving controlled substances. Rather, as Robinson points out, "[t]he statute allows an individual to possess, manufacture, purchase, produce, or transport drugs illegally without incurring tax liability or penalties, provided either the individual's activities involve less than the amount of drugs specified in the drug stamp tax statute or the individual timely pays the mandated tax." *Padavich v. Thalacker*, 162 F.3d 521, 523 (8th Cir. 1998). The Government counters that "the prohibition against possessing with the intent to distribute need not be absolute in order to come within the scope of USSG §4B1.2."

We need not decide whether the statute's regulation of shipment, transportation, importation, purchase, manufacture, and production of "taxable substances" comprises a controlled substance offense, however, because § 453B applies equally to persons who simply *possess* a specified amount of drugs—a violation which unquestionably fails to qualify as a controlled substance offense. *See Salinas*, 547 U.S. at 188. At most, then, it appears that § 453B criminalizes both conduct that does and does not qualify as a controlled substance offense.

The Government urges us to disregard the plain language of § 453B, asserting that application of the modified categorical approach is unwarranted because Robinson's conviction for violating § 453B conclusively establishes that he was convicted of a controlled substance offense. First, the Government contends that § 453B "categorically" qualifies as a controlled substance offense because "[t]he very elements of the offense require that the defendant be a *dealer* who unlawfully possess[es], distributes, or offers to sell a controlled substance." (emphasis added). But, as noted above, the Iowa Code's definition of "dealer" for purposes of the drug tax stamp statute encompasses persons who merely *possess* a threshold quantity of a specified substance. Iowa Code § 453B.1(3). Thus, in *State v. Franzen*, 495 N.W.2d 714 (Iowa 1993), the Iowa Supreme Court concluded that "possession of marijuana is a lesser included offense of failure to affix a drug tax stamp." *Id.* at 717 (applying identical provisions of the drug tax stamp statute as formerly codified at Iowa Code § 421A); *see also State v. Adams*, 554 N.W.2d 686, 691 (Iowa 1996) (concluding that sufficient evidence supported a factual finding that the defendant was a "dealer" for purposes of a § 453B conviction where the evidence permitted the trial court to find that the defendant possessed in excess of the specified quantity of crack cocaine).

Second, the Government argues that a violation of Iowa's drug tax stamp law necessarily qualifies as a controlled substance offense because "a dealer cannot violate the tax stamp law without committing the crime of illegally possessing a drug with intent to distribute." We remain unpersuaded. Indeed, *State v. Gallup*, 500 N.W.2d 437 (Iowa 1993), upon whose reasoning the Government relies, provides no support for the Government's construction of the drug tax stamp law. There, the defendant received concurrent sentences arising out of his conviction for two crimes: (1) delivery of a controlled substance, and (2) distribution of a taxable substance without a drug tax stamp. *Id.* at 439. He appealed, arguing that imposition of both sentences violated the Fifth Amendment's Double Jeopardy Clause. The Iowa Supreme Court agreed that the two convictions involved the same offense, because, in that case, "[t]he drug tax stamp offense cannot be committed without committing the delivery

-10-

offense."[2]  *Id.* at 442; *see also State v. Stage*, 596 N.W.2d 503, 503 (Iowa 1999).  It is upon this language that the Government now seizes, extrapolating that "a dealer cannot violate the tax stamp law without committing the crime of illegally possessing a drug with intent to distribute."  However, *Gallup* did not suggest that every violation of § 453B necessarily entails the commission of a distribution-related offense. Rather, the court held that where, as in *Gallup*, the defendant violated § 453B by *distributing* a taxable substance without a drug tax stamp, the underlying act of delivery was a lesser included offense of the tax stamp violation.  *Id.*  Indeed, the court expressly acknowledged that a defendant can violate § 453B in a variety of contexts without an intent to distribute, pointing to *State v. Lange*, 495 N.W.2d 105, 107 (Iowa 1992) (holding that manufacture of the specified quantity of a controlled substance is a lesser included offense of failing to affix a drug tax stamp), and, more importantly, to *Franzen*, 495 N.W.2d at 717 (holding that possession of the specified quantity of a controlled substance is a lesser included offense of failing to affix a drug tax stamp).

Because we cannot agree with the Government's position that a violation of Iowa's drug tax stamp law categorically qualifies as a controlled substance offense, we conclude that the drug tax stamp law is overinclusive and that we must apply the modified categorical approach to determine which portion of the statute was the basis for Robinson's conviction.  *See Ross*, 613 F.3d at 807.  The documentation presented at sentencing indicated only that Robinson was charged with "unlawfully possessing ten or more dosage units of Oxycodone, not having affixed a State of Iowa drug tax stamp, label, or other official indicia thereto."  This scant documentation provides no support for a conclusion that Robinson's tax stamp conviction was predicated on anything more than mere possession of Oxycodone, and, if anything, it favors an inference to the contrary.  Therefore, even assuming that Iowa's drug tax stamp law

---

[2] The court nevertheless concluded that imposing separate punishments for the two violations did not run afoul of the Double Jeopardy Clause because the Iowa legislature authorized cumulative punishment under the two statutes.  *Gallup*, 500 N.W.2d at 443 (citing *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983)).

-11-

encompasses some offenses which qualify under § 4B1.2—a point upon which we express no opinion—the Government plainly failed to show that Robinson's conviction was such an offense.[3]  Applying the modified categorical approach, then, we hold that the documentation before the district court was insufficient to permit it to treat Robinson's conviction as a controlled substance offense for purposes of the career offender enhancement.[4]  In accord with "the traditional path" of limiting the Government to one bite at the apple, we direct the district court on remand to resentence Robinson based on the record already before it.  *See United States v. Gammage*, 580 F.3d 777, 779, 780 (8th Cir. 2009).

---

[3] *United States v. Haltiwanger*, No. CR07-4037, 2009 WL 454978 (N.D. Iowa Feb. 23, 2009), on which the Government relies, is inapposite.  While the Government represents that *Haltiwanger* "hold[s] [that a] Kansas tax stamp conviction qualified as [a] predicate offense under [the] career offender guideline," the case actually addressed whether the defendant's tax stamp conviction qualified as a "felony drug offense" for purposes of determining the minimum sentence mandated by 21 U.S.C. § 841(b)(1)(A).  In the present case, by contrast, we are faced with the question whether a violation of the Iowa drug tax stamp law qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b), the definition of which is both different from and narrower than that of felony drug offense.  *See United States v. Sandle*, 123 F.3d 809, 812 (5th Cir. 1997).  For the same reason, our present holding does not collide with our reasoning in *United States v. Coleman*, 556 F.3d 851, 853 (8th Cir. 2009).

[4] Robinson also challenges his sentence as substantively unreasonable. Because we must vacate Robinson's sentence and remand the case to the district court for resentencing, we need not address the substantive reasonableness of the vacated sentence.

**III. CONCLUSION**

For the reasons stated above, we affirm the judgment of conviction, vacate Robinson's sentence, and remand the case for further proceedings not inconsistent with this opinion.

_____