# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 10-2911/2912/2914

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Michael Wesley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 14, 2011
Filed: August 5, 2011

_____

Before RILEY, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Michael Wesley of two counts of bank robbery and two counts of brandishing a weapon in furtherance of a crime of violence. The convictions placed Wesley in violation of two concurrent terms of supervised release he was serving at the time of the robberies. Wesley appeals his convictions, the supervised release violations, and his 512 month sentence, arguing the district court[1] erred in admitting

_____

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

evidence from a third bank robbery at trial and imposed an unreasonable sentence. We affirm.

I.  BACKGROUND

Wesley, a native of East St. Louis, Illinois, is a violent career criminal. From his first incarceration at age 17 in 1981 until 2008, Wesley never failed to commit crimes resulting in sentences of imprisonment within three months of release. During his brief periods of freedom, Wesley, now 47, engaged in conduct resulting in convictions for theft, burglary, trespass, aggravated assault by shooting, disturbing the peace, resisting arrest, obstructing a police officer, possessing stolen mail, and five counts of battery. Wesley was also convicted of robbing five St. Louis area banks in 1992.

While incarcerated at various institutions, Wesley was charged with 39 infractions, including, at least, six fights, six refusals to obey a lawful order, possession of a dangerous weapon on three occasions, and an assault. In addition, Wesley was charged and convicted of three offenses while serving his prison sentences: two assaults on federal corrections officers engaged in the performance of their official duties and, in 1999, one count of possession of a prohibited "prison-crafted knife, or shank." On August 27, 2008, Wesley was released from prison and began serving terms of supervised release related to his 1992 bank robbery and 1999 shank possession convictions. After his release, Wesley apparently stayed crime-free for over six months.

On March 6, 2009, Wesley, Ura Clerk, and Shamir Houston met at Houston's apartment, each bringing pistols and masks, and with Clerk also bringing a bag. They proceeded to a Commerce Bank branch in University City, Missouri. Clerk was the first inside the bank, jumping over a counter and taking money from the bank tellers. Wesley went in next, telling someone to lie on the ground. Houston entered last, telling people in another room to lie on the ground. When Clerk thought someone had

triggered an alarm, the robbers panicked and ran from the bank. The three robbers left with over $10,000 of the bank's federally-insured money.

On March 26, 2009, Wesley, Clerk, and Houston again met at Houston's apartment and prepared to rob another bank. They previously had agreed upon their individual duties for this robbery. Clerk drove to a Bank of America branch in Clayton, Missouri, and stayed in the car while Houston and Wesley entered the bank. Wesley went over the counter, while Houston remained out front. The robbers stole over $95,000 of the bank's federally-insured funds.

On April 30, 2009, Clerk and Houston were arrested pursuant to criminal complaints. The two were eventually indicted for two counts of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), 2, and two counts of brandishing a weapon in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1), 2. Each agreed to assist the government and to testify against Wesley in exchange for the dismissal of one § 924(c) firearms count requiring the imposition of a consecutive 25-year sentence.

On May 11, 2009, a person wearing a blue ski mask and carrying a gun robbed a Regions Bank branch in Fairview Heights, Illinois, a community 12 miles east of downtown St. Louis, Missouri. Wesley was later indicted for this robbery and a related weapons violation in the United States District Court for the Southern District of Illinois.[2]

Bank surveillance cameras recorded all three robberies and bank employees described the robbers' clothing and general body type. One of the robbers at all three banks wore a blue ski mask.

---

[2]Due to a series of continuances requested by Wesley, the Illinois case remains untried. Trial of the Illinois case is presently set for October 3, 2011. We presume Wesley is innocent of the pending Illinois charges.

Wesley was arrested on May 16, 2009. In a contemporaneous search of Wesley's residence, police found a bag in a common basement area containing a blue ski mask, $14,000, and a money "wrapper" bearing the initials of a teller at the Illinois bank, and also discovered various other items of clothing. On May 18, police searched Wesley's car and found a gold watch, an automatic pistol, and several receipts. On June 11, the grand jury returned a superseding indictment adding Wesley as a defendant in all four counts then pending against Clerk and Houston.

Clerk and Houston each pled guilty to the Missouri robberies and one § 924(c) count and were sentenced to 171 and 220 months imprisonment, respectively. Wesley's case proceeded to trial.

The government sought to introduce evidence of Wesley's 1992 bank robberies and evidence of the 2009 Illinois bank robbery, pursuant to Fed. R. Evid. 404(b). Ruling on Wesley's motion in limine, the district court excluded evidence of Wesley's prior bank robberies, but initially denied his motion as it related to the 2009 Illinois Regions Bank robbery. In denying the motion, the court reasoned "the May 11, 2009 robbery is admissible to show plan and identity, because it is similar and was committed only a few weeks after the bank robberies charged in the indictment."

The court was concerned there was insufficient evidence tying Wesley to the Illinois robbery for that robbery to be properly admitted under Rule 404(b). In particular, the court stated "the only evidence linking [Wesley] to the May robbery are items found during the search of the shared basement at his apartment – a gun, ski mask, and money wrapper. The money wrapper is the only unique item, as ski masks and guns are not easily distinguishable . . . from other ski masks and guns." Despite this concern, the district court decided to admit evidence of the Illinois robbery conditionally, subject to the court's ability to strike the evidence and instruct the jury to disregard it, if the government failed to "connect up" the evidence to the Missouri robberies. The court cautioned the government,

At the hearing defense counsel argued that the government did not need this evidence, and although that is not a proper legal argument, it has some practical appeal. I cannot exclude the evidence on that basis, of course, but I urge the government to consider whether taking the risk of improperly admitting the evidence is wise, under all the circumstances presented here.

Both Wesley and the government moved for reconsideration. The district court held a second pretrial hearing and decided to exclude evidence of the 2009 Illinois robbery. The court stated,

That means there should not be any discussions about that robbery from anybody, and certainly you can talk about the search warrant if there were items seized there like the blue mask that you believe are admissible in this case, I don't know what else you might think is admissible in this case from any of the search warrants or other seizures. I'm not ruling on that. It sounds like there is stuff that would be admissible, but that money wrapper from the third robbery, for example, would not be admissible.

Trial began on May 12, 2010. Wesley moved to exclude the $14,000 found in the bag with the mask and wrapper and the automatic pistol found in the car. The district court decided to allow the money into evidence because the money had not been conclusively linked to the Illinois robbery. Although the robber appearing on the Missouri bank surveillance camera recordings, whom the government maintains is Wesley, carried a revolver, not an automatic like the one found in Wesley's car, the district court found the automatic conditionally relevant because it might have been used by one of the other Missouri robbers.

Houston testified he, Wesley and Clerk robbed the Missouri banks, and Wesley was the robber on the surveillance tapes wearing the blue mask. Six bank employees testified about the robberies, one of whom noticed a robber at Bank of America was wearing distinctive purple "Stacy Adams" brand shoes matching shoes recovered from

Wesley's apartment. Two tellers identified the blue ski mask found at Wesley's building as the one used at a Missouri bank robbery. And an FBI agent testified he seized a gold watch from Wesley's car because it appeared to him to be the "identical" watch worn by one of the robbers in a bank surveillance video.

The jury found Wesley guilty on all four counts and the district court found Wesley violated the terms of his supervised release. At sentencing, the court found no restitution could be paid to the Missouri banks from the $14,000 recovered, because "that's not in this case, that would be in the Fairview Heights [Illinois] case." The court sentenced Wesley to 512 months imprisonment and 5 years supervised release, and Wesley appeals. Wesley appeals his conviction and sentence (10-2912) and the district court's revocations of supervised release in Wesley's 1992 bank robbery (10-2911) and 1999 shank possession (10-2914) cases.

## II. DISCUSSION
### A. Conviction

Wesley argues his convictions should be overturned because the district court erroneously admitted the automatic pistol and the $14,000 into evidence. We review the district court's evidentiary rulings for abuse of discretion. See United States v. Robinson, 639 F.3d 489, 492 (8th Cir. 2011). "Even when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." Id. (quoting United States v. Gustafson, 528 F.3d 587, 591 (8th Cir. 2008)).

The district court did not err in admitting the automatic pistol. Although the government admits the blue-masked robber appearing in the Missouri surveillance videos carried a revolver—not an automatic pistol—the district court suggested the automatic could have been used by one of the other robbers, leaving the question of the automatic's relevance to the jury. Wesley says he did not purchase the automatic pistol until after the Missouri robberies and claims "the government admitted that the gun and

-6-

bag of money were exclusive to the Illinois robbery." Our review of the record reveals no such unequivocal concession by the government, and neither the government nor the district court were required to believe Wesley's explanation.

The district court erred by admitting the $14,000 into evidence as "unexplained evidence of wealth," while simultaneously requiring that "the witnesses may not testify it came from the Fairview Heights [Illinois] bank robbery." "Unexplained evidence of wealth subsequent to the commission of a crime is relevant and generally admissible in the district court's discretion." United States v. Rodriguez, 484 F.3d 1006, 1012 (8th Cir. 2007). This is because "the sudden, unexplained acquisition of wealth is competent evidence supporting proof of guilt in larceny or crimes involving a motive of enrichment." United States v. Crisp, 435 F.2d 354, 360 (7th Cir. 1970). Such evidence is competent because the sudden and unexplained presence of wealth supports an inference that the wealth is the fruit of the crime for which the defendant stands accused. But here the evidence of wealth was not "unexplained." As the district court reflected when considering restitution at sentencing, "what might have been recovered [was] not in this case [but] would be in the Fairview Heights [Illinois] case."

Because the district court found evidence of the Illinois robbery could not be admitted under Rule 404(b), the $14,000 found in Wesley's shared basement was only relevant to this case if it came from one of the Missouri bank robberies. But the evidence points to an Illinois bank robbery origin for the $14,000. The money was found with a wrapper initialed by a teller at the Illinois bank. According to the government, when shown the wrapper, the Illinois bank teller stated, "Those are my initials, I put those on there, that money contained in that bank wrapper would be on the counter where the bank robber took the money." The district court specifically found the wrapper inadmissible because it was relevant only to the Illinois robbery. The district court nevertheless admitted the $14,000 as conditionally relevant because the court did not know what happened to the money stolen from the Missouri banks. The effect of the district court receiving $14,000 into evidence which was most likely

stolen from the Illinois bank, while precluding any discussion of the Illinois robbery under Rules 404(b) and 403, improperly implied to the jury that the money was the fruit of the Missouri robberies. This was an abuse of discretion.

We must next consider whether the district court's error "affected substantial rights or had more than a slight influence on the verdict." Robinson, 639 F.3d at 492. We conclude the government presented overwhelming evidence of Wesley's guilt. See United States v. Love, 521 F.3d 1007, 1010 (8th Cir. 2008) (affirming a bank robbery conviction despite possible evidentiary error where the evidence of guilt was overwhelming). Video surveillance cameras captured both Missouri robberies. Wesley matches the physical description of one of the robbers seen wearing a blue mask in the video recordings. Two bank tellers identified the blue mask found in Wesley's shared basement as the one worn by the man who robbed them. A teller identified the distinctive purple Stacy Adams shoes found in Wesley's apartment as the shoes worn by one of the robbers. Law enforcement found a gold watch in Wesley's car consistent with a watch visible on the arm of a robber in one of the video recordings. Houston confessed to robbing the banks with Wesley and identified Wesley as the blue-masked man appearing in surveillance video of both Missouri robberies. Even absent the $14,000, the evidence of Wesley's guilt was overwhelming.

At trial, the government apparently disagreed. In his short rebuttal argument, the prosecutor stressed the importance of the money to the government's case three times.

> Having only a ski mask does not make you a bank robber. Owning a pair of purple shoes does not make you a bank robber but [if you add the money]. . . . Take those three things together and give me a reasonable explanation for the presence of three things just like that together. . . . I concede there are more than one ski masks in the City of St. Louis. There are more than one pair of purple shoes.

Wesley argues he suffered unfair prejudice because "under the guise of complying with the court's 404(b) order . . . the government [was allowed] to present evidence of an unrelated crime as evidence of the charged crime without explanation." Wesley stresses that "[e]vidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an 'undue tendency to suggest decision on an improper basis.'" United States v. Looking Cloud, 419 F.3d 781, 785 (8th Cir. 2005) (quoting United States v. Sills, 120 F.3d 917, 920 (8th Cir. 1997)).

We agree with Wesley's characterization of events, but conclude the error could not have more than a slight impact on the verdict. See Robinson, 639 F.3d at 492. Upon review of the entire record, see Looking Cloud, 419 F.3d at 787 (quoting United States v. Crenshaw, 359 F.3d 977, 1003-04 (8th Cir. 2004)) ("An error is harmless 'if, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict.'"), the erroneous introduction of the $14,000 did not significantly affect the verdict in this case. Because the other evidence of Wesley's guilt was overwhelming, we conclude Wesley was not prejudiced by the district court's evidentiary ruling. We affirm Wesley's conviction.

## B.    Sentence

Wesley argues "the district court should have granted a downward variance from the guidelines" because although Houston and Clerk were equally culpable in committing the offenses, Wesley was subject to a statutorily mandated 25-year consecutive sentence for his second gun count and they were not. Wesley acknowledges in this circuit "it is not an abuse of discretion for a district court to impose a sentence that results in a disparity between co-defendants when there are 'legitimate distinctions' between the co-defendants." United States v. Davis-Bey, 605 F.3d 479, 483 (8th Cir. 2010) (quoting United States v. Watson, 480 F.3d 1175, 1178 (8th Cir. 2007)). Houston's and Clerk's cooperation with the government is such a

legitimate distinction. See United States v. Sandoval-Sianuqui, 632 F.3d 438, 444 (8th Cir. 2011) (rejecting disparity argument where co-conspirators were eligible for safety-valve relief and cooperated with the government, and appellant Sandoval-Sianuqui was ineligible for the safety valve and obstructed justice). In addition, Wesley's sentence was within his advisory Guidelines range, and this court applies a presumption of reasonableness to within-Guidelines range sentences. See Rita v. United States, 551 U.S. 338, 350-51 (2007); United States v. Coleman, 635 F.3d 380, 382 (8th Cir. 2011). And even if no presumption were applied, Wesley's sentence was based on concerns for protecting the public from Wesley, who historically begins committing violent crimes shortly after release from prison.

Lastly, Wesley suggests the court erred by not considering his personal and family circumstances. Wesley's presentence investigation report contains a discussion of Wesley's circumstances, and Wesley reiterated those issues in a sentencing memorandum he filed with the court. "Nothing in § 3553(a) or the [United States v. Booker, 543 U.S. 220 (2005)] remedy opinion requires 'robotic incantations' that each statutory factor has been considered." United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (quotation omitted). Although Wesley's sentence is long, the length derives from 18 U.S.C. § 924(c)(1)(C)(i)'s mandatory sentencing provisions. The district court did not err in sentencing Wesley.

## III.    CONCLUSION
We affirm Wesley's conviction and sentence.

_____