# IN THE COURT OF APPEALS OF IOWA

No. 18-0174
Filed April 17, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**OMAR MONTALVO NUNEZ,**
    Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Paul Scott, Judge.


        Defendant appeals his conviction for willful injury causing serious injury.

**AFFIRMED.**



        Ta-Yu Yang, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.



        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Omar Montalvo Nunez appeals his conviction for willful injury causing serious injury. We find Nunez has not preserved error on his claim concerning the use of a key witness to translate during an interview with the victim. We conclude there is substantial evidence in the record to support Nunez's conviction for willful injury causing serious injury based on a finding he aided and abetted his brother while the brother was stabbing the victim. We affirm Nunez's conviction.

## I.      Background Facts & Proceedings

On February 19, 2017, Jose Pena, the owner of El Carretero Farm in southeast Des Moines, held a gathering for people who boarded horses at his farm. There was music, food, and alcoholic beverages for those in attendance. Jose Desantiago, who boarded a horse there, brought his friend, Cristian Alvarez. Luis Montalvo (Luis) also boarded a horse at the farm and attended the gathering.

During the gathering, Luis rode his horse through a group of people. Either the horse stepped on someone's toes or it came too close to people, and Luis was reprimanded by some men. Several people noticed Luis was intoxicated. Luis became angry with Alvarez and started swearing at him. Pena told Nunez, Luis's brother, to take Luis away.

Alvarez walked into a horse barn. He stated Luis and Nunez were in the barn. Luis started screaming insults at him and hit him. Alvarez testified he tried to defend himself against the two brothers. At one point, Nunez hugged him from behind and Luis was able to get close to him, striking him several times. Alvarez was able to wriggle loose from Nunez, leaving Nunez holding his sweater. At this time, Desantiago came into the horse barn, looking for Alvarez. Desantiago saw

3

Alvarez had been stabbed, as there was blood on his shirt. Desantiago saw Nunez strike Alvarez in the head with his fist. Desantiago kicked the knife out of Luis's hand and Luis and Nunez ran away.

Desantiago called 911. Alvarez was taken to the hospital, where he was treated for five stab wounds, including one which caused a collapsed lung. Dr. Denville Myrie, the emergency room physician treating Alvarez, testified his injuries would have been life-threatening if he had not received medical treatment.

On the day of the incident, Alvarez was interviewed at the hospital by Officer Joseph Dardano, who is a certified Spanish interpreter. Alvarez's primary language is Spanish. Officer Dardano stated Alvarez used the word, "agarro," which he interpreted as "to grab," to describe Nunez's conduct during the fight. The next day, Officer Peter Wilson and an interpreter went to interview Alvarez. Desantiago was visiting Alvarez at the time. Although Officer Wilson brought an interpreter, Desantiago did most of the translating. Desantiago stated Alvarez used the word, "abrazo," which he translated as "to hug or bear hug," to describe Nunez's conduct. Police officers found a folding knife and a sweater with holes in it, matching the stab wounds to Alvarez, in the horse barn. After the incident, Luis left the country.

Nunez was charged with willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2017), a class "C" felony, under the theory Nunez aided and abetted in the offense. Nunez waived his right to a jury trial and the case was tried to the court. Nunez testified Luis stabbed Alvarez, but Nunez claimed he was trying to keep the men apart. He stated he hugged Alvarez, but also stated it was not a hug per se, and Alvarez was not wearing a sweater or

sweatshirt at the time. Nunez testified neither the term "agarro" nor "abrazo" could describe his conduct. Nunez denied assisting Luis while Luis was fighting Alvarez.

The district court found Nunez guilty of willful injury causing serious injury. The court found, "By holding Alvarez while his brother stabbed Alvarez, the Defendant actively participated in the crime." The court determined Nunez's testimony he was trying to break up the fight was not credible. The court concluded, "The State has proven beyond a reasonable doubt the Defendant actively participated in the crime with the knowledge that his brother had the specific intent to inflict serious injury upon Mr. Alvarez." Nunez was sentenced to a term of imprisonment not to exceed ten years. He now appeals.

## II. Use of Interpreter

On appeal, Nunez claims, "This case presents the question of whether a qualified interpreter should be provided at the investigative phase of a criminal proceeding, before an official complaint is filed, in which the victim of the crime is unable to fully participate because he or she cannot speak or understand English." He states under section 622A.2 any party or witness in a legal proceeding should be entitled to an interpreter during a criminal investigation. Nunez states Officer Wilson improperly allowed Desantiago, a key witness in the case, to translate during his interview of Alvarez.

During closing arguments, defense counsel argued Desantiago should not have been used an interpreter because he was a key witness and Officer Wilson had an interpreter with him. The district court did not address this issue. Nunez did not file a post-trial motion raising the issue. We conclude Nunez did not preserve error because there was no ruling on this issue by the district court. In

general, "issues must be presented to and passed upon by the district court before they can be raised and decided on appeal." *State v. Jefferson*, 574 N.W.2d 268, 278 (Iowa 1997). We do not address this issue because it has not been preserved for our review. *See State v. Robinson*, 618 N.W.2d 306, 311 (Iowa 2000) (declining to address issue where error had not been preserved).

### III.  Sufficiency of the Evidence

Nunez claims there is not sufficient evidence in the record to show he aided and abetted in the offense of willful injury causing serious injury. He states there is not substantial evidence to show he had the intent to injure Alvarez or had knowledge Luis had the intent to injure Alvarez. Nunez states he was attempting to keep Luis and Alvarez apart. He claims Alvarez's statements were inconsistent, noting the use of the term "agarro" at one point and then later, "abrazo."

We review claims challenging the sufficiency of the evidence to support a conviction for the correction of errors of law. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018). We will uphold a verdict if it is supported by substantial evidence. *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017) (citation omitted).

Nunez was tried under a theory he aided and abetted Luis in committing a crime. Section 703.1 provides:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part

the person had in it, and does not depend upon the degree of another person's guilt.

In order for a defendant to be guilty of aiding and abetting, "the State must prove the defendant 'knew of the crime at the time of or before its commission.'" *State v. Henderson*, 908 N.W.2d 868, 876 (Iowa 2018) (citation omitted). "To secure a conviction based on aiding and abetting, the State must introduce substantial proof to show that the accused 'assented to or lent countenance and approval to' the criminal act." *State v. Allen*, 633 N.W.2d 752, 754 (Iowa 2001) (citation omitted).

The State claimed Nunez aided and abetted his brother, Luis, in the commission of willful injury causing serious injury. Willful injury causing serious injury is a specific intent crime. *Krogmann v. State*, 914 N.W.2d 293, 322 (Iowa 2018). Where "specific intent is an element of the crime charged, 'a person may be convicted on a theory of aiding and abetting if [the person] participates either with the requisite intent . . . or with knowledge that the principal possesses the required intent.'" *State v. Lewis*, 514 N.W.2d 63, 66 (Iowa 1994) (citation omitted).

Alvarez testified he defended himself against both Nunez and Luis and fought both of them. He stated Nunez held him very tight so he could not move. He stated while he could not defend himself because Nunez was holding him, Luis got very close and this is when he was stabbed. The holes in Alvarez's sweater show he was stabbed while wearing the sweater. Alvarez testified he managed to get out of Nunez's grasp by wriggling out of his sweater, leaving Nunez holding the sweater. When Desantiago arrived, Alvarez was no longer wearing the sweater. Desantiago saw Alvarez had been stabbed and was bleeding. Desantiago saw Nunez strike Alvarez in the head with his fist.

The evidence shows Nunez "'assented to or lent countenance and approval to' the criminal act." *See Allen*, 633 N.W.2d at 754 (citation omitted). Luis was able to stab Alvarez repeatedly because Nunez held Alvarez so he was not able to defend himself. Whether Alvarez at one time used the term "agarro" and later used the term "abrazo" to describe when Nunez held him makes no material difference to this conclusion.

On the issue of specific intent, the district court found Luis stabbed Alvarez multiple times with a dangerous weapon. By repeatedly stabbing Alvarez in the chest and abdomen, Luis used the knife in a manner showing he intended to inflict death or serious injury on Alvarez. The court also found:

> The stabbing was facilitated by and occurred while the Defendant held Mr. Alvarez in his grasp, incapacitating him. The Defendant held Alvarez while he was stabbed multiple times. The State has proven beyond a reasonable doubt the Defendant actively participated in the crime with the knowledge that his brother had the specific intent to inflict serious injury upon Mr. Alvarez.

We find no error in the court's findings. Nunez testified he was aware Luis had stabbed Alvarez.

We conclude there is substantial evidence in the record to support Nunez's conviction for willful injury causing serious injury based on a finding he aided and abetted his brother Luis while Luis was stabbing Alvarez. We affirm Nunez's conviction.

**AFFIRMED.**