# IN THE SUPREME COURT OF IOWA

No. 21–0522

Submitted September 14, 2023—Filed October 20, 2023

**STATE OF IOWA,**

Appellee,

vs.

**DALTON WAYNE COOK,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wapello County, Joel D. Yates, Judge.

The defendant seeks further review of a court of appeals decision affirming his conviction for willful injury causing serious injury and the district court's failure to merge his conviction for willful injury causing serious injury with his conviction for robbery in the first degree. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

**CHRISTENSEN, Chief Justice.**

The defendant was convicted of first-degree robbery, in violation of Iowa Code sections 711.1 and 711.2 (2018), and willful injury causing serious injury, in violation of Iowa Code section 708.4(1), for his participation in the robbery of one individual and the assault of another. The defendant appeals his conviction for willful injury causing serious injury, arguing the jury convicted him based on insufficient evidence. The defendant also contends the district court imposed an illegal and unconstitutional sentence by failing to merge his conviction for willful injury causing serious injury with his conviction for robbery in the first degree.

The court of appeals affirmed both the conviction and sentence. On further review, we affirm the conviction and conclude the jury had sufficient evidence to convict the defendant of willful injury causing serious injury. We also affirm the district court's decision not to merge the willful injury causing serious injury conviction with the first-degree robbery conviction as it is possible to commit first-degree robbery under the dangerous-weapon alternative without also committing willful injury causing serious injury. That is because there are additional elements of willful injury causing serious injury that are not encompassed within the elements of first-degree robbery under the dangerous-weapon alternative. Therefore, merger was not required.

### I. Background Facts and Proceedings.

About an hour before midnight on August 2, 2018, Tami Holderbaum picked up her then-boyfriend Michael Bibby, and they headed to a cornfield "to pick up something [Bibby] left there": a rifle and a pistol. At about noon the next day, Bibby, with the two guns still in Holderbaum's car, drove Holderbaum to an appointment in Ottumwa. Also in the car were two of Bibby's friends, Dalton Cook and Dylan White. They never returned to pick up Holderbaum as promised.

At about the same time Holderbaum was dropped off, Colt Stewart drove Randi Hanrahan to Joseph and Amy Garrett's house on Lillian Street in Ottumwa to pick up her car that the Garretts had previously borrowed. Shortly after arriving, Stewart was in the front of the house talking on his cell phone when three men approached him. The tall man—later identified as Bibby—was wearing a black paintball mask and carrying an AR-15-style rifle. The shorter man—later identified as Cook—had red hair and was carrying a knife. The third man with Bibby and Cook was later identified as White.

When the men approached Stewart, one of them stated, "We're here to rob you." Thinking they were joking, Stewart laughed in response, prompting Cook to knock Stewart's phone out of his hand. Believing he was about to be jumped, Stewart shoved Cook to the ground and punched Bibby. Bibby fell to the ground and someone yelled, "Shoot him!" Bibby then shot Stewart in the thigh. The three men then proceeded toward the entrance of the home.

Amy Garrett was inside her home when she heard a "pop" sound, like "a paint can in a fire." She then saw Bibby fire his weapon toward the driveway before he entered the home and proceeded toward the bedroom. She heard Bibby demand "Where's the drugs?" and "Where's the money?" As the other two men entered the house, Amy quickly left through the back door and called 911 from a neighbor's cell phone.

Joseph Garrett was asleep in his bedroom when he was awakened by Bibby carrying his rifle and demanding money and drugs. Joseph also thought it was a joke and laughed in response. Bibby retorted, "Do you think this is a joke?" At this time, Hanrahan was also in the room. Bibby then grabbed Hanrahan by the hair, put her to her knees, held the rifle to her head, and stated, "This ain't a joke." Hanrahan pleaded with Bibby to take her purse, stating there was money inside, and Joseph insisted they were at the wrong home. Bibby took

Amy Garrett's purse hanging on the bed frame, backed out of the room, and started running after exiting the house through the back door.

Several police officers began responding to the incident. The information provided to the officers indicated that the three men were running to a nearby wooded area. Chief of Police Tom McAndrew soon observed the men running out of the wooded area into a field near Liberty Elementary School and pursued toward them. As he got closer, he saw Bibby aiming a rifle toward his vehicle. Chief McAndrew turned the vehicle sharply to the left and Bibby fired towards him, causing his passenger side window to shatter. Chief McAndrew drove away, attempting to take cover and put distance between him and the suspects. At this time, several additional officers had begun to arrive at Liberty Elementary School. While driving away, several times Chief McAndrew saw Bibby point the rifle toward him and the officers gathered in the school parking lot.

After Bibby hit Chief McAndrews's vehicle with gunfire, Cook broke off from the group of three and began running across the field. While Bibby and White continued to flee, Bibby would stop, aim, and occasionally shoot toward the officers in the parking lot. Officers returned fire until both Bibby and White were hit. White succumbed to his injuries and died at the scene and officers transported Bibby to receive medical attention. Although Cook made it across the field and out of the area apparently unscathed, a police officer later located Cook underwater in a nearby creek, at which time he surrendered.

Cook was subsequently charged with ten counts of attempted murder and one count each of first-degree robbery, first-degree burglary, and willful injury causing serious injury. After a seven-day jury trial, the district court granted Cook judgment of acquittal on eight of the ten counts of attempted murder. The jury returned its verdict on April 1, 2021. The jury acquitted Cook on one count of attempted murder of Tom McAndrew, and found Cook guilty of (1) robbery in

the first degree as an aider and abettor; (2) burglary in the first degree as an aider and abettor; (3) willful injury causing serious injury as to Stewart as an aider and abettor; and (4) assault with intent to cause serious injury as to Colt Stewart, a lesser included offense of attempted murder, under a theory of joint criminal conduct.

Cook was sentenced as follows: (1) for robbery in the first degree, an indeterminate term of incarceration not to exceed twenty-five years with a requirement to serve 58% of the sentence before being eligible for parole; (2) for burglary in the first degree, an indeterminate term of incarceration not to exceed twenty-five years; and (3) for willful injury causing serious injury, an indeterminate term of incarceration not to exceed ten years and a fine. The conviction for assault with intent to cause serious injury as to Stewart was merged with the willful injury conviction. The district court ordered the robbery and burglary sentences to run concurrently and the willful injury sentence to run consecutively.

Cook timely appealed. We transferred the case to the court of appeals, which affirmed the conviction and sentence. We granted Cook's application for further review.

## II. Standards of Review.

We review sufficiency of the evidence claims for the correction of errors at law. *State v. Mathis*, 971 N.W.2d 514, 516 (Iowa 2022) (citing *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021)). We will uphold a jury's verdict if it is supported by substantial evidence. *Id.* (citing *State v. Tipton,* 897 N.W.2d 653, 692 (Iowa 2017)). Evidence is substantial if it is "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* at 516–17. In reviewing the sufficiency of the evidence, we will consider all evidence contained in the record, not just the evidence supporting guilt. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). Further, we must view the "evidence in the light most favorable

to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (quoting *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005)).

We also review claims of an illegal sentence involving merger for correction of errors at law. *State v. Bloom*, 983 N.W.2d 44, 49 (Iowa 2022) (citing *State v. Roby*, 951 N.W.2d 459, 463 (Iowa 2020)). "Our review of double jeopardy claims is de novo." *Id.*

### III. Analysis.

Cook raises two issues on appeal. First, he contends the evidence was not sufficient to support his conviction for willful injury causing serious injury.[1] Second, Cook argues the district court imposed an illegal and unconstitutional sentence by failing to merge his conviction for willful injury causing serious injury with his conviction for robbery in the first degree.

**A. Sufficiency of the Evidence.** Cook argues there was insufficient evidence to convict him as an aider and abettor to the crime of willful injury causing serious injury as to Stewart. Iowa Code section 703.1 provides that those who aid and abet in the commission of a public offense "shall be charged, tried and punished as principals." As the district court correctly instructed the jury, aiding and abetting means to

> knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the

---

[1]In his sufficiency of the evidence argument, Cook also makes unexplained references to the weight of the evidence standard and the standard for granting a new trial. However, such references were not connected to any argument, so we analyze the issue presented under the sufficiency of the evidence standard. *See State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (indicating a "passing reference" in a brief is insufficient to raise the issue on appeal); *State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010) (citing *Baker v. City of Iowa City*, 750 N.W.2d 93, 102–03 (Iowa 2008)) ("Moreover, passing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal.").

> defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

*State v. Brimmer*, 983 N.W.2d 247, 256–57 (Iowa 2022).

To convict a defendant on the theory of aiding and abetting when intent is an element of a crime charged, the evidence must show that the defendant participated "with either the requisite intent, or with knowledge the principal possesses the required intent." *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000) (en banc). Because intent is not often susceptible to proof by direct evidence, "[a]iding and abetting may be proven by direct or circumstantial evidence," and both are equally probative. *State v. Crawford*, 974 N.W.2d 510, 517 (Iowa 2022) (quoting *State v. Huser*, 894 N.W.2d 472, 491 (Iowa 2017)); *see also State v. Lewis*, 514 N.W.2d 63, 66 (Iowa 1994).

On our review of the record, we hold a reasonable jury could have found beyond a reasonable doubt that Cook actively participated in or encouraged the willful injury against Stewart with the requisite intent or with knowledge Bibby possessed the requisite intent. The evidence shows that Cook was with Bibby in a vehicle transporting two guns. The three men approached the Garretts' home together. Bibby had on a black paintball-style mask and was brandishing a rifle. Cook was holding a knife. Cook forcefully removed the cell phone out of Stewart's hand. It is irrelevant that the evidence is unclear about who yelled "Shoot him!" *See State v. Browne*, 494 N.W.2d 241, 243 (Iowa 1992) ("Once Black had announced his intention to shoot Dewey Lamp, it may fairly be inferred that the actions of those gang members accompanying him to the Lamp residence were actions encouraging the intended criminal act."). Further, Cook continued into the home with Bibby while Bibby committed additional crimes, and then fled with Bibby after the fact.

There were numerous times before Stewart was injured that Cook could have stopped participating. Instead, he actively participated in the altercation by approaching Stewart outside the home and forcefully knocking the cell phone out of Stewart's hands. *See State v. Jefferson*, 574 N.W.2d 268, 277–78 (Iowa 1997) (indicating the appellant's failure to leave, intervene, or protest after seeing another man pull out a gun, demand money, and force the victim toward a backroom was evidence that the appellant could reasonably be found guilty of robbery as an aider and abettor).

Furthermore, Cook asserts it was unforeseeable that Stewart would knock him to the ground and then punch Bibby prior to the robbery and burglary. We disagree. The men were wearing dark clothing and were masked. Bibby was brandishing a rifle and Cook was carrying a knife. The fact that Bibby and Cook brought weapons to the scene indicates there was some expectation the weapons may need to be used in furtherance of the crime. Moreover, threatening words were uttered by the same group of people holding weapons. Given these circumstances, Cook could have foreseen that the target of his conduct would respond with physical force.

While the evidence may be circumstantial, when viewed in the light most favorable to the State, it was sufficient to prove Cook aided and abetted Bibby with the specific intent to cause willful injury or with knowledge of Bibby's intent to cause willful injury. *See State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010) (stating that by wielding and waving a box cutter or utility knife in front of the victim, the defendant used the instrument with an intent to inflict serious injury); *State v. Hickman*, 623 N.W.2d 847, 849–50 (Iowa 2001) (en banc) (stating that the defendant's use of a gun was sufficient evidence to support a conviction for willful injury causing serious injury); *State v. Welborn*, 443 N.W.2d 72, 73 (Iowa Ct.

App. 1989) (stating the defendant's active participation in the crime was sufficient to establish the aider and abettor's awareness of the principal's "intent to seriously injure the victim"). Accordingly, we affirm his conviction for willful injury causing serious injury.

**B. Merger.** Cook challenges the district court's failure to merge his willful injury causing serious injury conviction with his first-degree robbery conviction. Under Iowa Code section 701.9, "[n]o person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted." This statute codifies the double jeopardy protection against multiple punishments for the same offense. *State v. Daniels*, 588 N.W.2d 682, 683–84 (Iowa 1998). "[I]n deciding whether a punishment is constitutionally permissible under the Double Jeopardy Clause, we look to what punishment the legislature intended to impose." *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995) (citing *State v. Finnel*, 515 N.W.2d 41, 43 (Iowa 1994)). In determining legislative intent, "we first decide whether the crimes meet the legal-elements test for lesser included offenses. If they do, we then study whether the legislature intended multiple punishments for both offenses." *Id.* (citations omitted) (citing *Lewis*, 514 N.W.2d at 69).

1. *The legal-elements test.* The legal-elements test compares "the elements of the two offenses to determine whether it is possible to commit the greater offense without also committing the lesser offense." *Id.* If "a statute provides alternative ways of committing the offense, the alternative submitted to the jury controls." *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997) (citing *State v. Steens*, 464 N.W.2d 874, 875 (Iowa 1991)).

The elements of Cook's first-degree robbery charge were marshaled to the jury as follows:

1. On or about the 3rd day of August, 2018, [Cook] had the specific intent to commit theft.

2. To carry out this intention or to assist in escaping from the scene, with or without the stolen property, [Cook]:

a. Committed an assault on another . . . and in committing the assault [Cook] intended to inflict serious injury upon another, caused bodily injury or mental illness to another, used or displayed a dangerous weapon in connection with the assault, caused serious injury to another or

b. Threatened another with, or purposely put another in fear of immediate serious injury.

3. [Cook]:

a. Purposely inflicted or attempted to inflict a serious injury on another or

b. Was armed with a dangerous weapon.

The elements of Cook's willful injury causing serious injury charge were marshaled to the jury as follows:

1. On or about the 3rd day of August, 2018, [Cook] committed an assault against Colt Stewart.

2. [Cook] specifically intended to cause serious injury to Colt Stewart.

3. [Cook's] acts caused a bodily injury to Colt Stewart . . . .

When comparing the instructions provided to the jury, Cook's convictions do not satisfy the legal-elements test. The instruction provided for first-degree robbery presented two alternatives: that the defendant (1) purposely inflicted or attempted to inflict serious injury, or (2) was armed with a dangerous weapon. The instruction for first-degree robbery also required a specific intent to commit a theft. The instruction for willful injury causing serious injury requires bodily injury, which is not an element of first-degree robbery. Thus, there are additional elements of willful injury causing serious injury that are not present in the elements for first-degree robbery under the dangerous-weapon alternative.

This means that one can commit first-degree robbery under the dangerous-weapon alternative without also committing willful injury causing serious injury. Therefore, it is possible to commit the greater offense without also committing the lesser offense. Consequently, the two offenses for which Cook was convicted are not the same under the legal-elements test. As addressed in *State v. Brown*, ___ N.W.2d ___, ___ (Iowa 2023), also filed today, this conclusion is not inconsistent with our prior merger cases. Therefore, merger is not required here because the willful injury conviction requires proof of an additional element (serious injury) that first-degree robbery conviction does not. *See Bloom*, 983 N.W.2d at 51 (citing *State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992)). Therefore, under the legal-elements test, the crimes do not merge.

2. *Whether the legislature intended multiple punishments.* The second step in the analysis is to consider whether the legislature intended multiple punishments for first-degree robbery and willful injury causing serious injury. *See Halliburton*, 539 N.W.2d at 344. We did so in *Brown*, ___ N.W.2d at ___. Upon consideration of the issue and for the reasons set forth in *Brown*, we find that the legislature did intend multiple punishments, and hold that Cook's conviction for first-degree robbery and willful injury causing serious injury do not merge. Accordingly, we uphold the sentences imposed by the district court for the conviction of first-degree robbery and willful injury causing serious injury.

**IV. Conclusion.**

For the foregoing reasons, we affirm the court of appeals decision and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**